### PEOPLE v. METROPOLITAN SURETY CO.

### MUSEUM OF FINE ARTS v. SAME.

(Supreme Court, Appellate Division, Third Department. January 5, 1916.)

1. CORPORATIONS ⬅627—DISSOLUTION—DISTRIBUTION OF ESTATE—PRIORITIES.

In an action by the people for dissolution of insolvent corporation, and distribution of its assets, claims representing a liability fixed at commencement of the action must be first paid; but contingent claims can participate only in the surplus remaining after payment of fixed liabilities and costs of administration.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2476; Dec. Dig. ⬅627.]

2. CORPORATIONS ⬅627—DISSOLUTION—DISTRIBUTION OF ESTATE—FIXED LIABILITY.

Where a bond was given to secure the performance of a building contract, conditioned for payment on refusal or failure to continue the contract, and the contractor in May refused to continue, the liability then became fixed, so that the obligee was entitled to first payment from the assets of the surety, against which insolvency proceedings were commenced the following January.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2476; Dec. Dig. ⬅627.]

3. CORPORATIONS ⬅627—DISSOLUTION—DISTRIBUTION OF ESTATE—FIXED LIABILITY.

In such case, the fixed character of the liability was not altered by a supplemental agreement thereafter made for completion of the work, by which the assured agreed to pay the contractor any excess of contract price over cost of the work, and they and the surety agreed that the assured should be paid any excess in cost over the contract price at the completion of the work, though completed after the insolvency proceedings, since all parties used the contract as a means of determining only the amount of a liability already fixed.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2476; Dec. Dig. ⬅627.]

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. PRINCIPAL AND SURETY ⊙⟹145—JUDGMENT AGAINST CONTRACTOR—CON-
CLUSIVENESS.
    In such case, where the assured sued the contractor, including a claim
for premiums paid for liability insurance, and the claim was held not a
proper element of damages, the assured could not afterwards hold the
surety on the same claim, being concluded by the judgment in the other
action.
    [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§
397–401; Dec. Dig. ⊙⟹145.]

5. JUDGMENT ⊙⟹707—CONCLUSIVENESS—MATTERS CONCLUDED—OTHER AC-
TION.
    Where judgment runs against the assured in one action for liability
on breach of a contract, performance of which was secured by several
bonds, and for it on several suits on the bonds, upon the issue whether
the bonds covered liability insurance premiums, the judgments for it in
some actions were not res adjudicata as to that issue in an action on
another bond; the surety not being a privy to the other suits.
    [Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1230; Dec.
Dig. ⊙⟹707.]

6. PRINCIPAL AND SURETY ⊙⟹145—CONCLUSIVENESS OF ADJUDICATION
AGAINST PRINCIPAL—EXTENT OF LIABILITY.
    The liability of a contractor, whose performance of a building contract
was secured by a bond, having been determined in an action against
him by the obligee, the obligee could not thereafter claim a greater sum
from the surety.
    [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§
397–401; Dec. Dig. ⊙⟹145.]

Appeal from Special Term, Albany County.

Action by the People against the Metropolitan Surety Company, in
which the Museum of Fine Arts appeals from an order allowing its
claim against defendant and requiring its prorating with other claims.
Modified.

The claimant appeals from an order confirming the report of the
referee and allowing its claim at $10,563.25, to be paid pro rata, with
other like claims, from any surplus remaining after all legal and proved
claims which accrued against the Metropolitan Surety Company on or
prior to January 6, 1909, together with all fees, expenses, and disburse-
ments allowed or to be allowed the receiver or his attorney shall have
been fully paid.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOOD-
WARD, and COCHRANE, JJ.

Theodore L. Frothingham, of New York City, for appellant.

John Burlinson Coleman, of New York City (Francis X. Brosman,
of New York City, on the brief), for receiver.

Egburt E. Woodbury, Atty. Gen., for the People.

JOHN M. KELLOGG, P. J.   [1] In an action brought by the peo-
ple to dissolve an insolvent corporation and distribute its assets among
its creditors, the distribution is to take place first among the creditors
whose claims represent a fixed liability at the time of the commence-
ment of the action and the order of sequestration.   A contingent claim,
where the liability is not fixed and certain at that time, but depends

⊙⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

upon the happening thereafter of an uncertain event, can only share in the surplus remaining after the fixed liabilities and the expenses of administration have been paid. The order appealed from determines that the appellants' claim was a contingent and not a fixed liability at the time of the order of sequestration.

The Fleet Case, 205 N. Y. 135, 98 N. E. 412, Ann. Cas. 1913D, 1180, and Matter of Empire State Surety Co., 214 N. Y. 553, 108 N. E. 825, along the dividing line between a fixed and a contingent liability, show that the line is narrow but nevertheless distinct. The Fleet Case arose upon an undertaking given to secure the issuing of an attachment in an action by which the surety was to pay any judgment that might be recovered against its principal in that action. At the time of the sequestration order the action was still pending. It was held that the liability was contingent and dependent entirely upon the event of a lawsuit; that if the lawsuit resulted in the plaintiff's favor there never could be any liability. The Empire Surety Company Case arose upon liability indemnity policies issued to employers to indemnify them against loss resulting from liability on account of accidents to their employés, and provided that in the case of accidents the Surety Company would defend the action, unless it settled the claim, and would pay any judgment within the limits of the policy. The accident happened before the order of sequestration, but the settlement or judgment did not take place until after the order was made. The court held that the action to dissolve the company and the order of sequestration rendered it impossible for the Surety Company to defend the action, and resulted, in substance, in its then breach of the policy, and that the claim was a present and not a contingent liability. The fact that it was unknown at that time what the amount of damages would be was immaterial. That related, not to the existence of the liability, but to the liquidation of the damages.

[2] In our case the court held that the appellant's claim was contingent within the rule of the Fleet Case. The Surety Company, with other like companies, was the surety of one Stannard upon his bond to the Museum, conditioned that he would faithfully perform his contract to furnish the material and construct a building for the Museum at Boston, Mass. By the bond each Surety Company became severally liable in a penalty stated therein. When the building was about half finished, and a little more than half the contract price had been paid to Stannard, he defaulted in the performance and abandoned the work, May 14, 1908. The action for dissolution was brought and the sequestration order made on the 6th day of January, 1909. It is evident, therefore, that the liability upon the bond itself falls within the rule of the Empire State Surety Co. Case, and not of the Fleet Case. The claim became a fixed liability against the Surety Company prior to the bringing of the action of dissolution.

[3] It is urged that the supplemental agreement made between Stannard, the Surety Companies, and the Museum, June 2, 1908, changed this present fixed liability into a contingent liability, and that the contingency continued until after the order of sequestration was made. The Museum, immediately upon Stannard's default, notified

him that according to the terms of the contract it would take possession of the premises and the scaffolding apparatus and plant and proceed to complete the work. The supplemental agreement recited the facts and provided that the Museum may forthwith take possession of the materials, scaffolding, and plant, and use the same to complete the work; that Stannard, so long as the Museum desires, will act as the superintendent of the work under its supervision, and will, if requested, assign all subcontracts to it. The Surety Companies and Stannard agree, in substance, that the Museum may proceed to complete the contract, make the necessary payments therefor as stated therein, and that the payments so made by the Museum shall be deemed a part of the cost of completing the contract, and that the Museum shall be credited with payments already made to Stannard and for all payments made by it in completing the contract. It then provided:

"The obligation of said Museum to pay to said Stannard any excess of contract price over the cost of completing said contract as defined herein and in said contract shall remain in full force; the obligation of said Stannard and of said Surety Companies to pay to said Museum any excess of such cost over the contract price shall remain in full force."

It stated that the agreement is made to provide for the completion of the work under said contract, with the assent of all the parties interested, and the provisions thereof shall, be supplemented to and in addition to the provisions of said contract for the completion of the work thereunder by the Museum. Upon Stannard's default the Museum might, at its election, have brought an action at once upon the bond to recover its damages. By the testimony of experts, based upon the plans, the specifications, contract, and the work already done, it could have established approximately its damages, or it might cause the building to be erected according to the plans and specifications and then bring suit to recover the damages. It would then be an easy matter to establish what the damages actually were.

The facts as developed make it plain that at the time of the breach of the contract it was evident that the Surety Companies would be required to pay substantial damages. That that was the understanding is evidenced by the supplemental agreement, where the Surety Companies agree to be bound by the expenditures made by the Museum in completing the contract. By the supplemental agreement the Museum intended to have its building promptly completed and the damages against the Surety Companies and Stannard definitely ascertained, and the Surety Companies intended to have a fixed and certain method by which the damages should be ascertained. It was, so far as the Surety Companies were concerned, a mere method of ascertaining the damages resulting from the breach of the contract. It is evident, if after Stannard's breach all parties had agreed to have the damages fixed by arbitrators, such agreement would not have rendered the liability of the Surety Company contingent, although the arbitration continued until after the sequestration order. It would seem to follow that any other means adopted could not result in converting the fixed liability into a contingent one. The language of the supplemental agreement, "that the obligation of said Stannard and of said Surety

Companies to pay to said Museum any excess of such cost over the contract price shall remain in full force," makes it clear that the fixed liability of the Surety Companies continued. If the liability remained in full force, that contract did not change a fixed liability into a mere contingency. The court was therefore in error in applying the rule in the Fleet Case to the plaintiff's claim.

[4] In erecting the building the Museum expended $2,040.86 in premiums for liability insurance, indemnifying it against liability on account of accidents to its employés. The order appealed from holds such expenditure is not a part of the cost of completing the building. If the question were open, it would seem, the practice of liability insurance is so general, and is so commonly treated as an overhead charge upon the work, that it might well be considered a part of the cost. But the Museum brought an action against Stannard in the United States District Court for the Southern District of New York to recover the damages which it had sustained by reason of his breach of the contract, in which it sought to recover this item, and the court held that the premiums were paid by the Museum to guard itself against the results of its own negligence and could not be charged against the cost of the work. That decision remains in full force and no appeal has been taken. It therefore conclusively establishes between them for all time that this item was not a part of the damages resulting from Stannard's breach of the contract. The Surety Company, by its bond, is liable to make good to the Museum the damages it may sustain by Stannard's breach of the contract. If an adjustment had been made between the Museum and Stannard, and the liability fixed, it seems clear that the claimant could insist that its liability is limited to the amount agreed upon. We view this judgment as having the same effect.

[5, 6] The Museum brought actions on the bond against some of the other Surety Companies in Massachusetts to recover its damages, and in such actions it was held that this item was a proper element of damage, and that decision was affirmed by the Supreme Court. The Metropolitan Surety Company and Stannard were not parties to those actions, and they cannot be held to be adjustments of the liability between Stannard and the Museum. We are not precluded, therefore, from considering that the receiver may urge that the plaintiff should get no more damage from the Surety Company than it could get from Stannard. It would be an anomaly in the law if, after this item has been held by the judgment of a competent court not to be a proper liability against Stannard on account of the breach of the bond, the Museum may recover the same from the Surety Company, leaving it to seek reimbursement from Stannard after it had been established between Stannard and the Museum that there is no liability. The Museum cannot by indirection recover this item from Stannard's surety after it has been determined in an action between it and Stannard that it formed no basis for liability.

The order appealed from should therefore be modified, so as to provide that the claim of the appellant as fixed by it shall share in the assets of the Surety Company pro rata with all other allowed claims on

bonds ·executed by the Metropolitan Surety Company as surety, which were existing liabilities on January 6, 1909, with $10 costs and printing disbursements to the appellant. All concur; HOWARD, J., in result.