Frank LOWELL, Plaintiff-Appellant,

v.

TWIN DISC, INCORPORATED,
Defendant-Appellee.

No. 159, Docket 75–7259.

United States Court of Appeals,
Second Circuit.

Argued Oct. 17, 1975.

Decided Nov. 18, 1975.

Joseph M. Weitzman, New York City, for plaintiff-appellant.

Mark F. Hughes, New York City (Willkie, Farr & Gallagher, Robert J. Kheel and Richard L. Feller, New York City, of counsel), for defendant-appellee.

Before MANSFIELD, TIMBERS and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

This is an appeal by plaintiff Frank Lowell from a decision of the United States District Court for the Eastern District of New York, Jacob Mishler, *Chief Judge*, which denied leave to amend the complaint and granted defendant's motion to dismiss the complaint on the ground of res judicata.

On July 3, 1968, appellant and his then partner, Robert Everett, citizens of New York, executed a stock acquisition agreement with defendant Twin Disc, Incorporated ("Twin Disc"), a citizen of Wisconsin. Under this agreement, appellant and his partner ("the shareholders"), who owned all the stock of Lem Instrument Corporation ("Lem"), agreed to exchange their Lem stock for stock of Twin Disc having a market value of $150,000. The agreement further provided that during the seven years following the execution of the agreement, Twin Disc would give the shareholders additional Twin Disc stock equal in value to 25% of Lem's pre-tax net earnings, if any, up to a total maximum amount of $500,000. It was further agreed that if Twin Disc decided, prior to June 30, 1975, to dissolve Lem, to sell any or all of its assets other than in the ordinary course of its business, or to sell the stock of Lem, then the shareholders would have the option to purchase from Twin Disc all the outstanding shares of Lem upon terms not less favorable than those of the contemplated transaction.[1]

On the same day, the appellant signed an employment contract with Lem, in which he agreed to serve as General Manager and President of Lem for a period of seven years. During this time, he agreed to "devote his full time and his best efforts" in the furtherance of the interests of Lem. This employment contract was guaranteed by Twin Disc, which agreed to make comparable employment available to appellant if Lem was liquidated or sold. The contract provided that it was to be construed in accordance with the laws of the State of New York.

From the time that the contracts were executed in July 1968 until October 1972, Lem operated at a loss. On October 9, 1972, the board of directors of Lem voted to cease operations and to discharge appellant for failure to perform his duties under the employment contract.

Shortly thereafter, appellant brought this action against Twin Disc in the New York Supreme Court, Suffolk County. The action was removed by the defendant to the federal court pursuant to 28 U.S.C. § 1441 on the basis of the diverse citizenship of the parties.

Before this action could come to trial, however, appellant brought another action for damages in the New York Supreme Court, Suffolk County, against Lem rather than against Twin Disc ("state court action"). The complaint alleged that Lem had breached its obliga-

---

1. The agreement also provided that the principal business location of Lem would remain in New York.

tions under the employment contract by terminating plaintiff's employment without cause. Lem maintained that the plaintiff's discharge was for cause. Plaintiff did not assert any claims based on the stock acquisition agreement in the state court action.

This action was tried before Judge Scileppi and a jury. On October 12, 1973, the jury returned a unanimous verdict for the defendant. The judgment was affirmed by the Appellate Division, *Lowell v. Lem Instrument Corp.*, 44 App. Div.2d 775, 354 N.Y.S.2d 1006 (2d Dep't 1974), and leave to appeal was denied by the Court of Appeals. 34 N.Y.2d 520, 360 N.Y.S.2d 1025, 318 N.E.2d 611 (1974).

■ After the completion of the state court action, the plaintiff moved to amend his complaint in this federal action. The complaint, as originally filed, contained three counts. The first count alleged that Twin Disc had guaranteed Lem's obligations under the employment contract, that Lem had breached its obligations under that contract by discharging plaintiff without cause, and that plaintiff had thereby been damaged. The second count alleged that Lem had failed to pay plaintiff certain fringe benefits and cost-of-living increases. The third count alleged that Twin Disc had breached the *stock acquisition* agreement by terminating Lem's operations and by disposing of its assets other than in the ordinary course of business, thereby depriving plaintiff of the option to acquire Lem's stock in the event of a termination of Lem's operations, and further depriving plaintiff of the opportunity to receive additional shares of Twin Disc stock if the operations of Lem became profitable. In his affidavit in the District Court appellant conceded that the issues under the employment contract had been determined in the state court action, and he, accordingly, withdrew the

first two claims for relief, which were based upon the employment contract. In place of the third cause of action, he proposed to substitute six new claims for relief. These were all based on the stock acquisition agreement or the guarantee of the employment contract by Twin Disc.[2] Twin Disc opposed plaintiff's motion to amend, and moved for summary judgment, asking the court to dismiss all three counts of the original complaint on grounds of res judicata and collateral estoppel.[3]

The court denied plaintiff's motion for leave to amend and granted defendant's motion for summary judgment. It found that all three counts of the complaint were barred by res judicata, and that amendment would be futile because the causes of action set forth in the amended complaint would similarly be barred.

Although the court recognized that the third count of the complaint was based on the stock acquisition agreement and not on the employment contract, it found that "[t]he stock acquisition agreement was . . . implicitly conditioned upon plaintiff's continued status as an employee in good standing." While it recognized that no clause in the agreement expressly conditioned the payments to be made under the stock acquisition agreement upon plaintiff's continued employment under the employment contract, the court concluded nevertheless that "since both contracts were executed simultaneously and for the same purpose . . . such terms must be presumed."

■ We think that the court erred in granting summary judgment on that ground. Two separate written agreements executed at the same time may be considered in law as one agreement, but only if the parties so intended. Whether the parties intended that the two agree-

**2.** We have no doubt that the guarantor of an employment contract is released when a verdict is returned in favor of the employer whose performance has been guaranteed. See *United States v. American Surety Co.*, 56 F.2d 734, 736 (2 Cir. 1932); *People v. Metropolitan Surety Co.*, 171 App.Div. 15, 20–21, 156 N.Y.S. 1027, 1031 (3d Dep't 1916).

**3.** We treat the matter as a question of collateral estoppel (issue preclusion).

ments should be interdependent is a question of fact which turns upon the circumstances of each case. See *Commissioner v. Le Gierse*, 110 F.2d 734, 735 (2 Cir. 1940), *rev'd on other grounds*, 312 U.S. 531, 61 S.Ct. 646, 85 L.Ed. 996 (1941); *Sterling Colorado Agency, Inc. v. Sterling Insurance Co.*, 266 F.2d 472, 475–76 (10 Cir. 1959); 6 *Williston on Contracts* § 863, at 279–80 (3d ed. W. Jaeger 1962). As Williston put it, the test is as follows: "It can be nothing else than the answer to an inquiry whether the parties assented to all the promises as a single whole, so that there would have been no bargain whatever, if any promise or set of promises were struck out." *Id.* at 275.

In the case at bar the issue is whether the employment contract and the stock acquisition agreement are an entire contract or whether they are divisible. What did the parties intend if appellant should die shortly after the agreements were executed? Would his inability to perform under the employment contract cut off his right to future profits, or were these simply a part of the purchase price, payable, in any event, to his estate? On the other hand, if appellant was discharged for failure to use his best efforts under the employment contract, as he was here, would he still retain his right to future profits under the stock acquisition agreement? The two agreements, as drawn, cast no light on the interrelationship, if any, between the rights and duties of the parties under the agreements.

■ Parol evidence may be resorted to, therefore, so long as it is not inconsistent with and does not vary or contradict the written agreements. "Accordingly, the court may and should look to the prior negotiations to determine what was intended." *Rudman v. Cowles Communications, Inc.*, 30 N.Y.2d 1, 11, 330 N.Y.S.2d 33, 40, 280 N.E.2d 867, 872 (1972); see *Sun Oil Co. v. Heller*, 248 N.Y. 28, 31–32, 161 N.E. 319, 320 (1928); *Restatement (Second) of Contracts* § 240 (Tent. Draft 1973). We have followed a similar formulation in *Union Insurance*

*Society of Canton, Ltd. v. William Gluckin & Co.*, 353 F.2d 946, 951 (2 Cir. 1965). It follows that where, as here, extrinsic evidence is admissible, summary judgment does not lie. *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317 (2 Cir. 1975); *Aetna Casualty & Surety Co. v. Giesow*, 412 F.2d 468, 471 (2 Cir. 1969); *Lemelson v. Ideal Toy Corp.*, 408 F.2d 860, 863–64 (2 Cir. 1969).

■ Since there is a triable question of fact respecting the intention of the parties, it was error "to presume" that the obligation of Twin Disc to continue its performance under the stock acquisition agreement was, as a matter of law, "implicitly conditioned" on appellant's continued satisfactory performance under the employment contract.

This analysis does not necessarily lead to the conclusion, however, that summary judgment in favor of the defendant should not have been granted.

■ It is a fundamental principle of law that in every contract there exists an implied covenant of good faith and fair dealing. See *Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87, 188 N.E. 163, 167 (1933); *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Co.*, 30 N.Y.2d 34, 45, 330 N.Y. S.2d 329, 333, 281 N.E.2d 142, 144, *cert. denied*, 409 U.S. 875, 93 S.Ct. 125, 34 L.Ed.2d 128 (1972). Furthermore, each contract contains an implicit understanding that neither party will intentionally do anything to prevent the other party from carrying out his part of the agreement. "Persons invoking the aid of contracts are under implied obligation to exercise good faith not to frustrate the contracts into which they have entered." *Grad v. Roberts*, 14 N.Y.2d 70, 75, 248 N.Y.S.2d 633, 637, 198 N.E.2d 26, 28 (1964). "It is likewise implied in every contract that there is a duty of cooperation on the part of both parties. *Thus, whenever the cooperation of the promisee is necessary for the performance of the promise, there is a condition implied that the cooperation will be given.*" *Rochester Park, Inc. v. City of Rochester*, 38 Misc.2d 714, 718, 238 N.Y.

S.2d 822, 827 (Sup.Ct.), *aff'd*, 19 A.D.2d 776, 241 N.Y.S.2d 763 (4th Dep't 1963), *quoting* 10 *New York Jurisprudence* § 203, at 111–12 (1960) (emphasis in original).

The issue thus becomes whether there was a finding by the jury in the state court action that appellant's discharge was for failing faithfully and diligently to discharge his duties and for failing to use his best efforts on behalf of the corporation. If he failed to exert his best efforts for the corporation, he cannot, even if the employment and the stock acquisition contracts are deemed independent, support a claim of good faith. It would be wrong to allow a claim for profits that the plaintiff himself thwarted by his failure to use his best efforts in furtherance of the common enterprise or for the right to buy Lem shares that were undoubtedly depressed by the plaintiff's nonperformance of his obligations under the employment contract.

Normally, the question of whether a party has breached an implied covenant of good faith would be for the jury. But here the facts may have been conclusively determined against appellant in the state court action under the doctrine of collateral estoppel. That doctrine would conclusively determine the facts, but only if collateral estoppel is applicable to a second action in which both parties are not formally the same.

■ In this case, appellant is himself a party in both actions. If the issue tendered to the first jury was found adversely to the plaintiff, he is bound in the second action even though the defendant in the second action is not the same as the defendant in the first action. The lack of mutuality of estoppel is not fatal. "[T]he party *against* whom the plea is raised was a party to the prior action and 'had full opportunity to litigate the issue of its responsibility.' (See *Liberty Mutual Ins. Co. v. Colon*, 260 N.Y. 305, 312, 183 N.E. 506, 508)." *Good*

*Health Dairy Products Corp. v. Emery*, 275 N.Y. 14, 18, 9 N.E.2d 758, 759 (1937) (emphasis in original); see *Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 151 N.Y. S.2d 1, 134 N.E.2d 97 (1956). See also *Ritchie v. Landau*, 475 F.2d 151 (2 Cir. 1973). Perhaps the classic exposition was that of Justice Traynor in *Bernhard v. Bank of America Nat'l Trust & Sav. Ass'n*, 19 Cal.2d 807, 122 P.2d 892 (1942). Justice Traynor noted that the exception to the requirement of mutuality of estoppel was justified "on the ground that it would be unjust to permit one who has had his day in court to reopen identical issues by merely switching adversaries." 19 Cal.2d at 813, 122 P.2d at 895. And see *New York News, Inc. v. New York Typographical Union No. 6*, 374 F.Supp. 121, 125 (S.D.N.Y.1974).[4]

■ We are remitted to the question, then, whether the issue tendered to the jury in the state court action involved the issue whether appellant was discharged for failing faithfully to perform his duties and for failing to use his best efforts on behalf of the company. We have accordingly studied the record in the state court action.

Judge Scileppi charged the jury in substance, inter alia, that if the jury finds from the evidence that plaintiff failed faithfully and diligently to perform his duties, or failed to use his best efforts as called for in the contract, then the plaintiff may not recover since those failures would constitute a breach of contract by the plaintiff. The court also told the jury that they may consider the losses sustained by the corporation, the plaintiff's projected sales and projected profits, and the operation plans which he devised "on the broad question of whether the Plaintiff faithfully and diligently performed his duties under the contract, and whether he used his best efforts on behalf of the corporation in the operation of said business in accordance with the provisions of the contract of employment contained in paragraph 1

---

**4.** In view of our conclusion on this issue, we need not consider whether, in any event, Twin

Disc could avail itself of collateral estoppel because it was in privity with Lem.

thereof." [5] With the issue thus tendered, the jury returned a verdict for the defendant.

Appellant had a full and fair opportunity to contest the issue in the state court action, see *Schwartz v. Public Administrator,* 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969), which he actually did. Since the jury found that appellant had failed to use his best efforts on behalf of Lem, we hold that he may no longer contend that he has duly performed the implied covenant of cooperation under the stock acquisition agreement. The parent appellee, Twin Disc, may properly assert that appellant was collaterally estopped. Appellant's breach of the implied covenant of good faith was established beyond permissible relitigation.

The dismissal of the complaint is affirmed as is the order denying leave to amend the complaint.[6]

---

5. The employment contract was in evidence in the state court action as Plaintiff's Exhibit 2. In paragraph one, Lowell agreed "to devote his full time and his best efforts in the furtherance and interests of LEM."

6. The refusal to allow the amendment of a complaint that had been filed over two years earlier is also sustainable on the ground of laches.