09-5277-cv
Novick v. AXA Network, LLC

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - - -

August Term, 2010

(Argued: January 5, 2011                    Decided: June 13, 2011)

Docket No. 09-5277-cv

_____

STEVEN S. NOVICK,

Plaintiff-Counterclaim-Defendant-Appellant,

- v. -

AXA NETWORK, LLC, AXA ADVISORS, LLC,

Defendants-Counterclaimants-Appellees.

_____

Before: KEARSE, WINTER, and HALL, Circuit Judges.

Appeal from a partial final judgment of the United States District Court for the Southern District of New York, Alvin K. Hellerstein, Judge, granting, prior to the resolution of any of plaintiff's claims, summary judgment to defendants on one of their counterclaims for repayment of money loaned to plaintiff. See Fed. R. Civ. P. 54(b).

Appeal dismissed for lack of appellate jurisdiction.

MICHAEL S. FINKELSTEIN, Garden City, New York (Finkelstein & Feil, Garden City, New York, on the brief), for Plaintiff-Counterclaim-Defendant-Appellant.

MICHAEL A. KALISH, New York, New York, (Howard Schragin, Epstein, Becker & Green, New York, New York, on the brief), for Defendants-Counterclaimants-Appellees.

KEARSE, Circuit Judge:

Plaintiff Steven S. Novick, who commenced the present action against defendants AXA Network, LLC ("AXA Network"), and its sister company AXA Advisors, LLC ("AXA Advisors") (collectively "AXA"), asserting claims of breach of contract and various business torts in connection with AXA's alleged wrongful termination of Novick's employment affiliation with AXA, has appealed from a partial final judgment of the United States District Court for the Southern District of New York, Alvin K. Hellerstein, Judge, granting summary judgment in favor of AXA on one of its counterclaims against Novick for nonrepayment of the outstanding balance of a loan for which he had given a promissory note. The district court ruled that there were no genuine issues of fact to be tried as to that counterclaim and, citing Fed. R. Civ. P. 54(b), ordered that a partial final judgment be entered immediately on that counterclaim, requiring Novick to pay AXA $539,038.77 plus interest, costs, and expenses including attorneys' fees. On appeal, Novick contends that (1) summary judgment was inappropriate, arguing that the promissory note and his affiliation agreements with AXA involved contractually interdependent promises and that AXA failed to fulfill its own obligations, and (2) the court abused its discretion in denying his request, pursuant to Fed. R. Civ. P. 62(h), that execution on the partial final judgment be stayed pending resolution of his claims against AXA. For the reasons discussed below, we conclude that the district court's Rule 54(b) certification was

- 2 -

inappropriate, and we thus dismiss the appeal for lack of appellate jurisdiction.

I. BACKGROUND

The parties' pleadings reveal the following agreements. In November 2002, Novick, a stockbroker and insurance salesman with a sizeable book of clients, entered into agreements with AXA Advisors, a broker/dealer, and AXA Network, an insurance company, pursuant to which Novick became affiliated with those companies as an independent contractor (the "Affiliation Agreements" or "Agreements"). The parties agreed, inter alia, that Novick, upon terminating his affiliation with another company, would serve his clients through AXA, and that AXA would compensate Novick principally by paying him commissions based on the total AXA revenues he generated. The parties also agreed that AXA would give Novick, as a "Proven Producer," two early loans, one for $500,000 and one for $1 million, to assist him with the expense of ending his prior business affiliation. In connection with these loans, Novick executed promissory notes in favor of AXA Network, one in January 2003 for $500,000 (the "January Loan Note") and the other in August 2003 for $1 million (the "August Loan Note" or "Loan Note"). The latter is the promissory note that is the subject of this appeal.

"The [August] Loan Note was secured by interests in Novick's commissions, compensation and other amounts payable to

him by AXA." (AXA Counterclaims ¶ 22). The Loan Note provided that, if Novick defaulted on his loan payment obligations, AXA could "apply (directly or by the way of set-off) to the payment of any amounts owing by [Novick] . . . all commissions, compensation of any kind and other amounts in any form payable to [Novick] under any of [Novick's] agreements with AXA." (August Loan Note at 2.) Although October 1, 2008 was the date by which the loan was scheduled to be repaid in full (see id. at 1), the Loan Note also provided that "[i]f any of [Novick's] AXA Agreements or [Novick's] affiliation with AXA is terminated for any reason, the entire amount owed under this Note shall automatically become immediately due and payable" (id. at 2 (the "acceleration clause")).

In October 2006, AXA terminated the Affiliation Agreements with Novick, stating that its action was based on Novick's failure to comply with all the provisions or conditions of the Agreements. In November 2006 and again in June 2007, AXA demanded payment of the unpaid principal amount of the August Loan Note, which was $450,000, plus all accrued interest. Novick made no further payments.

Novick commenced the present action against AXA Network in August 2007, adding AXA Advisors as a defendant in an amended complaint, asserting claims for breach of contract and various business torts, alleging that AXA had failed to pay him commissions to which he was entitled and had terminated its affiliation with him in retaliation for his "whistle blowing" to

AXA management about sales-practice violations allegedly committed by another AXA broker. (See Amended Complaint ¶¶ 9-10, 14-15.) Alleging that "AXA's conduct has damaged Mr. Novick in an amount in excess of $460,491.78"--the amount demanded by AXA in November 2006 (Amended Complaint ¶ 35)--the first cause of action in Novick's amended complaint requested a declaratory judgment "adjudicat[ing] the rights and other legal relationships of the parties" (id. ¶¶ 33, 36) with regard to the Affiliation Agreements (see id. ¶¶ 23-26), the January Loan Note (see id. ¶¶ 27-33), and the August Loan Note (see id. ¶¶ 34-36). The amended complaint also asserted causes of action for, inter alia, unfair business practice and interference with Novick's prospective business relationships, alleging that AXA, after terminating the Affiliation Agreements, made false statements about Novick in a regulatory filing and in communications with Novick's clients, whom AXA solicited to sever their ties with Novick and become clients of other AXA agents. (See id. ¶¶ 53-70.) The amended complaint's prayer for relief included requests for "at least $10,000,000" in compensatory damages (id. WHEREFORE ¶ (a)), and a "declar[ation] that Plaintiff is relieved of any financial obligation created pursuant to either the [January Loan Note] or the $1 million [August] Loan Note" (id. WHEREFORE ¶ (b)).

AXA filed an answer and asserted counterclaims with respect to Novick's failures to pay the amounts due on the January Loan Note and the August Loan Note, along with a third

- 5 -

counterclaim alleging unjust enrichment. Following a period of discovery, AXA moved for partial summary judgment on its counterclaim with respect to the August Loan Note. It argued that there were no genuine issues of fact to be tried as to, inter alia, (a) AXA's making the $1 million loan, (b) Novick's giving AXA the promissory note in that amount, (c) Novick's repayment of only $550,000 of that amount, leaving an outstanding principal balance of $450,000, and (d) the terms of the promissory note making Novick's outstanding debt on that loan due immediately upon termination of the Affiliation Agreements "for any reason" and making Novick liable for the expenses of collection. AXA stated that as of the date of the motion, accrued interest amounted to $89,038.77, making the total due $539,038.77.

Novick, without disputing his execution of the August Loan Note, opposed the motion on the grounds, inter alia, (1) that one of his claims is for breach of contract based on AXA's alleged failure to compensate him fully for his work under the Affiliation Agreements, that that failure by AXA unfairly prevented him from making additional payments on the August Loan Note, and that the amounts due him on that claim should constitute a setoff of the amount he owed under the August Loan Note; and (2) that given his claim that AXA wrongfully terminated the Affiliation Agreements in retaliation for Novick's having blown the whistle on wrongdoing by another AXA employee, AXA should not be allowed to invoke the August Loan Note's acceleration clause.

Novick argued that setoff should be allowed because his promissory note and the promises in the Affiliation Agreements were interdependent. In support of that argument, he submitted a copy of an AXA interoffice email dated October 16, 2001 ("AXA Internal Email" or "AXA Email"), describing the then-ongoing negotiations for the Affiliation Agreements and the up-front loans that Novick needed to cover the cost of bringing his clients' business to AXA. As to what AXA was offering in order "to bring him on board," the AXA Email listed, inter alia, the proposed $1 million loan to Novick--along with a $500,000 forgivable loan that would be "paid up front and earned out based on his production, like the normal proven producer bonus"--stating that "[t]his would give him $1.5 million at signing."

Novick requested, if the court were to grant AXA's motion and enter a partial final judgment on the August Loan Note counterclaim, that the court stay enforcement of such a judgment pursuant to Fed. R. Civ. P. 62(h) pending resolution of Novick's claims, contending that his recovery on those claims would offset part or all of any amounts due on AXA's August Loan Note counterclaim. Novick stated that if execution were allowed immediately, it would cause him undue hardship, prejudice his attempt to pursue his claims, and cripple him financially.

The district court, in an order dated August 27, 2009 ("August 2009 Order"), granted AXA's motion for partial summary judgment on the August Loan Note counterclaim. Applying New York law, the court ruled, inter alia, that the counterclaim was

- 7 -

separable from other claims because the agreements in question did not involve interdependent promises. The court reasoned that the Affiliation Agreements and the August Loan Note were "executed separately," months apart, and it pointed out that while the August Loan Note "expressly allows AXA to withhold commissions from [Novick] if [Novick] defaults on the note, . . . it does not correspondingly allow [Novick] to withhold payment on the note if AXA fails to pay commissions. . . . Nor does the note excuse [Novick] from payment if he was wrongfully terminated as well as inadequately compensated." Id. at 3. Finding no triable issues of fact as to Novick's liability on the August Loan Note counterclaim or the amounts of principal and interest due on that note as of the date of AXA's motion, the court ordered Novick to pay AXA $539,038.77, plus additional interest, costs, and expenses including attorneys' fees. See id. at 3-4. The court also stated, citing Fed. R. Civ. P. 54(b), that it saw "no reason to stay entry of judgment against Plaintiff on the note, as it arises from the breach of a separate obligation, and would not prejudice Plaintiff's ability to pursue, and collect any judgment on, his claims." August 2009 Order at 3. The court sub silentio denied Novick's Rule 62(h) request that it stay AXA's execution on such a judgment.

## II. DISCUSSION

On appeal, Novick contends principally that the district court erred in finding the promises made in the August Loan Note and the Affiliation Agreements to be independent of one another and abused its discretion in not granting a stay of execution on the judgment upholding AXA's counterclaim pending resolution of Novick's claims. For the reasons that follow, we conclude that the district court's Rule 54(b) certification was inappropriate and that entry of the partial final judgment was an abuse of discretion.

In general, there is a "'historic federal policy against piecemeal appeals.'" Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 8 (1980) ("Curtiss-Wright") (quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 438 (1956) ("Sears Roebuck"). Thus, in the federal district courts, the entry of a final judgment is generally appropriate "only after all claims have been adjudicated." Harriscom Svenska AB v. Harris Corp., 947 F.2d 627, 629 (2d Cir. 1991) ("Harriscom").

As an exception to this general principle, Rule 54(b) provides that

> [w]hen an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b). The policy against piecemeal appeals "requires that the court's power to enter such a final judgment before the entire case is concluded, thereby permitting an aggrieved party to take an immediate appeal, be exercised sparingly." Harriscom, 947 F.2d at 629.

The requirement that the district court make an express determination "that there is no just reason for delay," Fed. R. Civ. P. 54(b), means that the court must provide a "reasoned," even if brief, "explanation" of its considerations, Harriscom, 947 F.2d at 629, for "[i]t is essential . . . that a reviewing court have some basis for distinguishing between well-reasoned conclusions[,] arrived at after a comprehensive consideration of all relevant factors, and mere boiler-plate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law," Ansam Associates, Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 445 (2d Cir. 1985) (internal quotation marks omitted). A certification that is not appropriate is insufficient to confer appellate jurisdiction. See, e.g., Harriscom, 947 F.2d at 631; Brunswick Corp. v. Sheridan, 582 F.2d 175, 183 (2d Cir. 1978).

To be appropriate, a Rule 54(b) certification must take account of both the policy against piecemeal appeals and the equities between or among the parties.

> Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims. . . . It is left to the sound judicial discretion of the district court to determine the "appropriate time" when each final decision in a

multiple claims action is ready for appeal. . . . This discretion is to be exercised "in the interest of sound judicial administration." . . . .

Thus, in deciding whether there are no just reasons to delay the appeal of individual final judgments . . . a district court must take into account judicial administrative interests as well as the equities involved. Consideration of the former is necessary to assure that application of the Rule effectively "preserves the historic federal policy against piecemeal appeals." . . . . It [i]s therefore proper for the District Judge . . . to consider such factors as whether the claims under review [a]re separable from the others remaining to be adjudicated and whether the nature of the claims already determined [i]s such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.

Curtiss-Wright, 446 U.S. at 8 (quoting Sears Roebuck, 351 U.S. at 435, 437, 438 (emphases ours)).

Accordingly, in the analysis of whether a Rule 54(b) certification was appropriate,

the standard against which a district court's exercise of discretion is to be judged is the "interest of sound judicial administration." . . . . Admittedly this presents issues not always easily resolved, but the proper role of the court of appeals is not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record.

There are thus two aspects to the proper function of a reviewing court in Rule 54(b) cases. The court of appeals must, of course, scrutinize the district court's evaluation of such factors as the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units. But once such juridical concerns have been met, the discretionary judgment of the district court should be given substantial deference, for that court is "the one most likely to be familiar with the case and with any justifiable reasons for delay." . . . . The reviewing court should disturb the trial court's assessment of the

equities only if it can say that the judge's conclusion was clearly unreasonable.

Curtiss-Wright, 446 U.S. at 10 (quoting Sears Roebuck, 351 U.S. at 437 (emphases ours)); see also Pahlavi v. Palandjian, 744 F.2d 902, 905 n.5 (1st Cir. 1984) ("It is only after th[e] first [Curtiss-Wright] test is met that the appeals court should go on to review the trial court's assessment of the equities, giving substantial deference to the trial court's discretion.").

In applying these principles, we have repeatedly noted that the district court generally should not grant a Rule 54(b) certification "'if the same or closely related issues remain to be litigated.'" Harriscom, 947 F.2d at 629 (quoting National Bank of Washington v. Dolgov, 853 F.2d 57, 58 (2d Cir. 1988) (other internal quotation marks omitted)). "It does not normally advance the interests of sound judicial administration or efficiency to have piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case" in successive appeals from successive decisions on interrelated issues. Harriscom, 947 F.2d at 631.

In the present case, the district court's Rule 54(b) certification stated as follows:

> I find no reason to stay entry of judgment against Plaintiff on the note, as it arises from the breach of a separate obligation, and would not prejudice Plaintiff's ability to pursue, and collect any judgment on, his claims. See Fed. R. Civ. P. 54(b).

August 2009 Order at 3 (emphasis added). Our difficulty with this certification is that our review of the ruling that Novick's liability on the August Loan Note "arises from the breach of a

- 12 -

separate obligation" would require consideration not only of the note agreement itself but also of the Affiliation Agreements and of Novick's arguments that AXA has breached those Agreements and an implied covenant of good faith and fair dealing.

In general, "'when two parties have made two separate contracts it is more likely that promises made in one are not conditional on performances required by the other.'" Rudman v. Cowles Communications, Inc., 30 N.Y.2d 1, 13, 330 N.Y.S.2d 33, 42 (1972) ("Rudman") (quoting 3A Corbin, Contracts § 696, at 290 (1960 ed.)). But "[t]he issue of the dependency of separate contracts . . . boils down to the intent of the parties." National Union Fire Insurance Company of Pittsburgh, Pa. v. Turtur, 892 F.2d 199, 205 (2d Cir. 1989) ("Turtur"); see, e.g., Rudman, 30 N.Y.2d at 13, 330 N.Y.S.2d at 42; Rosenthal Paper Co. v. National Folding Box & Paper Co., 226 N.Y. 313, 320 (1919) ("Rosenthal").

> Whether the parties intended to treat both agreements as mutually dependent contracts, the breach of one undoing the obligations under the other, is a question of fact. In determining whether contracts are separable or entire, the primary standard is the intent manifested, viewed in the surrounding circumstances . . . .

Rudman, 30 N.Y.2d at 13, 330 N.Y.S.2d at 42 (emphases added); see also Turtur, 892 F.2d at 205 ("Questions of intent, we note, are usually inappropriate for disposition on summary judgment.").

As to "'whether the parties assented to all the promises as a single whole,'" the test is whether "'there would have been no bargain whatever, if any promise or set of promises were struck

- 13 -

out,'" Lowell v. Twin Disc, Inc., 527 F.2d 767, 770 (2d Cir. 1975) ("Lowell") (quoting 6 Williston on Contracts § 863, at 275 (3d ed. W. Jaeger 1962)). The test as to the parties' intent must be applied with a measure of common sense:

> By a long series of decisions, the rule has been established that the question whether covenants are to be held dependent or independent of each other is to be determined by the intention and meaning of the parties, as expressed by them, and by the application of common sense to each case submitted for adjudication.

Rosenthal, 226 N.Y. at 320.

> When the promises of the parties are concurrent and dependent, either party defaulting in performance cannot, in the course of performance, sustain an action against the other because he has also defaulted.

Id. at 322.

> Furthermore, each contract contains an implicit understanding that neither party will intentionally do anything to prevent the other party from carrying out his part of the agreement. Persons invoking the aid of contracts are under implied obligation to exercise good faith not to frustrate the contracts into which they have entered. . . . It is likewise implied in every contract that there is a duty of cooperation on the part of both parties. Thus, whenever the cooperation of the promisee is necessary for the performance of the promise, there is a condition implied that the cooperation will be given.

Lowell, 527 F.2d at 770 (internal quotation marks omitted) (first emphasis added; second emphasis in original); see also id. ("It is a fundamental principle of law that in every contract there exists an implied covenant of good faith and fair dealing.").

Given these principles, we cannot conclude that the district court properly took account of the interests of sound judicial administration and efficiency in determining that a

- 14 -

partial final judgment, permitting an immediate appeal, was appropriate. Without resolving the question of whether the court was correct in its conclusion that Novick's promise to repay the $1 million loan and AXA's promises in the Affiliation Agreements are independent, we think it clear that that conclusion cannot be reviewed properly without consideration of the parties' intent in entering into the Affiliation Agreements and the circumstances surrounding those Agreements, for the independence or interdependence of promises cannot be determined by examining one promise in isolation.

The district court's observation that the $1 million loan was made months after the Affiliation Agreements were entered into does not avoid the need to consider on appeal the circumstances surrounding the Affiliation Agreements. Without expressing a view on the merits of summary judgment, we note, for example, that Novick argues that that loan had been promised to him to induce him to enter into the Affiliation Agreements, or in the words of the AXA Internal Email, "to bring him on board." Novick asserts that he needed the $1 million loan in order to, inter alia, repay an outstanding loan from the firm he would leave to join AXA, and the AXA Internal Email on the negotiations for the Affiliation Agreements described AXA executives' calculation of "how much of an up-front loan we could give [Novick]" (emphasis added) to "satisfy his needs." The AXA Email stated that AXA was offering Novick the $1 million loan plus the forgivable $500,000 loan, and that "[t]his would give him $1.5 million at signing." Thus, the

AXA Email may indicate that the $1 million loan was integral to the Affiliation Agreements despite the interval between the signing of the Affiliation Agreements and the giving of the promissory note on the loan.

The AXA Email may also indicate that AXA's promises with regard to Novick's compensation were integral to his signing the promissory note. The email described the $1 million loan as essentially "an advanced commission since we are lowering his payout," stating the expectation that Novick should be able to, inter alia, repay the $1 million loan in about three years out of the commissions he was expected to earn. Thus, the absoluteness of Novick's promise to repay the $1 million loan cannot be determined without consideration of AXA's promises with regard to Novick's compensation.

Further, the fact that the August Loan Note expressly allowed AXA to withhold earned commissions from Novick if he failed to make payments on the note may be an indication that Novick's promissory note and AXA's obligations under the Affiliation Agreements were not meant to be entirely independent. The fact that the note contains no provision expressly allowing Novick to withhold payments on the promissory note if AXA withheld his commissions, does not eliminate the possibility that Novick may ultimately be found justified in withholding payment on the note if AXA--which had anticipated that Novick would earn commissions sufficient to pay the $1 million loan--is found to have breached the implied covenant of good faith and fair dealing

- 16 -

by, as claimed by Novick, demanding immediate repayment of the loan after breaching the Affiliation Agreements, by, inter alia, improperly withholding commissions due him and soliciting his clients to leave him, thereby disabling him from repaying the loan.

We think it plain from this record that an assessment of the correctness of the district court's ruling that the August Loan Note was independent of the promises made by AXA in the Affiliation Agreements will involve consideration of the AXA promises underlying Novick's claims for breach of contract and wrongful termination and of the relationships among those promises. Thus, on the present appeal, this Court would be required to consider many of the same issues that will need to be considered in any appeal from a final judgment adjudicating Novick's claims. Accordingly, we conclude that the district court's Rule 54(b) certification of the judgment on the August Loan Note for immediate appeal is contrary to the interests of sound judicial administration and efficiency and thus constituted an abuse of discretion. Its certification was therefore insufficient to confer appellate jurisdiction.

Finally, in light of the policy against piecemeal appeals, it is incumbent upon a party seeking immediate relief in the form of a Rule 54(b) judgment to show not only that the issues are sufficiently separable to avoid judicial inefficiency but also that the equities favor entry of such a judgment. Although not essential to our ruling that the present appeal must be dismissed,

- 17 -

we note that despite Novick's claim that AXA is withholding commissions owed to him and despite his repeated requests for an accounting, AXA does not appear to have represented to the district court, in either affidavit or documentary form, that it is not withholding any such commissions. In the absence of such evidence, it is difficult to see that the equities favored allowing AXA to immediately execute upon the judgment on its counterclaim.

## CONCLUSION

We have considered AXA's arguments in support of the district court's Rule 54(b) certification and have found them to be without merit. For the reasons discussed above, the entry of a partial final judgment on AXA's counterclaim constituted an abuse of discretion, and the order granting summary judgment on that counterclaim should remain interlocutory. The appeal is dismissed for lack of appellate jurisdiction.

No costs.