**UNITED STATES of America, Plaintiff**

**v.**

**John M. PURDY, Jr., Defendant**

**No. CRIM. 3:95CR00100(AV).**

United States District Court, D. Connecticut.

July 27, 1999.

---

Jacob D. Zeldes, Zeldes, Needle & Cooper, Bridgeport, CT, Brian E. Spears, U.S. Attorney's Office, Bridgeport, CT, John J.E. Markham, Markham & Read, Boston, MA, Jason W. Loomis, Boston, MA, for Defendant.

Christopher F. Droney, U.S. Attorney's Office, New Haven, CT, Mark G. Califano, U.S. Attorney's Office, Bridgeport, CT, for U.S.

## RULING ON THE PETITION FOR WRIT OF HABEAS CORPUS

COVELLO, Chief Judge.

This is an application for a writ of habeas corpus. It is brought pursuant to 28 U.S.C. § 2255.[1] In his application, the petitioner, John Purdy, seeks to vacate and set aside his sentence and conviction. The issue presented is whether Purdy received ineffective assistance of counsel. For the reasons discussed herein, the court concludes that Purdy has failed to establish that his counsel was ineffective, and, therefore, the application is denied.

## FACTS

The court finds the following facts. In February, 1995, the government implicated Purdy in a kickback scheme. Upon learning of the impending indictment, Purdy hired Jacob Zeldes, an experienced attorney, to represent him. The federal prosecutor, Mark Califano, met with Zeldes on several occasions prior to Purdy's indictment. After these meetings, Zeldes would record what transpired in a detailed memorandum. Zeldes would then communicate the content of the meetings to Purdy by telephone, letters, and/or face-to-face conferences. Califano indicated, throughout all negotiations, that in the event of a guilty plea, the government would be seeking a term of imprisonment.

On April 6, 1995, Zeldes conveyed to Purdy the government's position on Purdy's expected cooperation in the event of a guilty plea as follows: "[i]f there's a plea, Mr. Califano expects that Mr. Purdy will have to disclose what he did with respect to payments to Pratt & Whitney and G.E. and any other companies, as well as his direct sales to the U.S.A." Zeldes further conveyed that "Mr. Califano said that it would be necessary to fully cooperate if Mr. Purdy entered a plea and say what he knew about the agent and what he knew about other matters." After reviewing this information with Purdy, Zeldes chronicled that Purdy "balked at ... Califano's charge that an FBI agent tipped him off about a potential investigation," denied the government's allegations as to his guilt, and claimed that he had no knowledge of the illegal payments to which Califano referred.

On April 26, 1995, Zeldes entered the following statement in his notes: "Mr. Califano said that the case would probably go to [j]udge Burns and he didn't know of any case where a white collar criminal with those guidelines had gone to jail with [j]udge Burns or [j]udge Dorsey." Zeldes does not dispute that this remark was

---

1. 28 U.S.C. § 2255 provides in part: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or ... is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

made nor does he dispute that he did not communicate Califano's specific remark to Purdy. Rather, Zeldes explained that because he had recently represented a white collar defendant who received a four and a half year sentence from judge Burns, he doubted the veracity of Califano's statement. Further, he did not want to coerce or pressure Purdy's entry of a guilty plea under circumstances wherein his client continually maintained his total innocence.

On June 19, 1995, Zeldes wrote a letter to Purdy in which he stated that the government's position was "that on a plea of guilty, the charge would be limited to a single count and the likely period of incarceration would be between 18 to 24 months, with the possibility, but not the certainty, of a lesser sentence." Purdy acknowledges that despite his awareness of the government's position, he failed to make any inquiries about the possibility of a lesser sentence.

On January 16, 1996, Zeldes wrote a letter to Purdy reviewing the strength of the government's case. The letter included a summation of the charges currently pending against him, the applicable sentencing guidelines, the possibility of additional charges, and the expected difficulties in "troublesome" aspects of the case. Zeldes specifically stated that "I thought it important that you receive this information. I do this not to urge you to plead guilty to something you maintain you did not engage in, but to simply advise you on the situation as it exists."

On or about February 19, 1996, Zeldes wrote a further letter to Purdy which stated "[i]n view of the severity of the exposure, it is important that you give very careful consideration to all phases of this case." Zeldes informed Purdy that key people would be testifying that "Purdy agreed to make kickbacks for favorable treatment." Zeldes warned Purdy that "to the extent that the jury does not accept Mr. Purdy's explanation of the negative deductions, such payments are consistent with the existence of an agreement to provide kickbacks to Sikorsky purchasing agents." Zeldes specifically explained to Purdy that "it will be difficult to convince the jury that the[ payments] were not made for purposes of kickbacks...." Purdy once again said he "d[idn't] know what the government was talking about." Further, Zeldes conducted a mock cross-examination of Purdy to demonstrate the strength of the government's case, and to thoroughly question Purdy concerning the discrepancies between his testimony and the government's evidence.

During the entire period and indeed, throughout his trial, Purdy repeatedly maintained his innocence and his desire to "have his day in court" despite Zeldes repeated admonitions that Purdy consider the strength of the government's case. On several occasions when Zeldes would review with him the strength of the government's case, Purdy fabricated explanations.

On May 16, 1996, a jury found Purdy guilty of conspiracy to pay kickbacks in violation of the Anti–Kickback Act pursuant to 41 U.S.C. § 51 et seq.. As a result of the conviction, Purdy has been disbarred from contracting with the government and now has a felony record. In the event of his acquittal, Purdy would neither have been disbarred nor have a record of a felony conviction.

On December 9, 1996, the court sentenced Purdy to 37 months in prison. Purdy unsuccessfully appealed his sentence and conviction. Thereafter, because of his subsequent cooperation with the government, the court reduced Purdy's sentence by 19 months pursuant to Fed. R.Crim.P. 35. On March 26, 1999, Purdy filed the within petition for a writ of habe-

as corpus pursuant to 28 U.S.C. § 2255. In April 1999, Purdy commenced serving his sentence. On June 7, 1999, the court conducted a hearing with respect to Purdy's allegations of ineffective assistance of counsel.

## STANDARD

The Supreme Court has recognized that 28 U.S.C. § 2255 provides a prisoner in custody with the ability to move the court which imposed the sentence to vacate the sentence if the sentence is in violation of the constitution or federal laws. *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954). "The distinction to be made for purposes of determining whether an argument is properly considered under section 2255, then, is between constitutional or jurisdictional errors on the one hand and mere errors of law on the other." *Grimes v. United States,* 607 F.2d 6, 10 (2d.Cir.1979). "The usual method of challenging the effectiveness of defense counsel in a federal criminal trial is by a collateral attack on the conviction under 28 U.S.C. § 2255." *See United States v. Aulet,* 618 F.2d 182, 185 (2d. Cir.1980).

The Court of Appeals for the Second Circuit has recognized that "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in complete miscarriage of justice.' " *Graziano v. United States,* 83 F.3d 587, 589–90 (2d Cir.1996) (citing *United States v. Bokun,* 73 F.3d 8, 12 (2d Cir.1995)). "A collateral attack on a criminal conviction must overcome the threshold hurdle that the challenged judgment carries with it a presumption of regularity." *Williams v. United States,* 481 F.2d 339, 346 (2d Cir.),

*cert. denied,* 414 U.S. 1010, 94 S.Ct. 373, 38 L.Ed.2d 248 (1973); *Johnson v. Zerbst,* 304 U.S. 458, 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

■ On a motion to vacate a sentence, the movant has the burden of showing that he is entitled to relief. *Williams,* 481 F.2d at 346 (2d Cir.); *see also Barnes v. United States,* 579 F.2d 364 (5th Cir.1978). The Second Circuit has recognized that "the scope of review on a § 2255 motion should be 'narrowly limited' in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources." *Graziano v. United States,* 83 F.3d 587, 590 (2d Cir.1996).

## DISCUSSION

In his petition, Purdy argues that his conviction and sentence should be set aside because he received ineffective assistance of counsel. Specifically, Purdy argues that: 1) Zeldes did not accurately or fully inform him about plea discussions that Zeldes had with the prosecutor, Mark Califano; and 2) Zeldes did not provide him with adequate advice about plea options. Further, Purdy argues that if Zeldes had properly informed him of the plea discussions, he "would have pleaded guilty and his sentence would have been less that the 18 months he is presently sentenced to serve."

The government responds that Zeldes "accurately and promptly conveyed the terms upon which the [g]overnment would accept a plea of guilty and would consider the cooperation of [Purdy]." Further, the government contends that in order for Purdy to prevail on his claim of ineffective assistance of counsel, he must make a two-prong showing—(1) "that his counsel's performance was deficient" and (2) "that this deficient performance prejudiced the defense." *Bloomer v. United States,* 162 F.3d 187, 192 (2d Cir.1998); *Strickland v.*

*Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The government argues that "Purdy's claim cannot satisfy either prong required to establish his ineffective-assistance claim."

Pursuant to *Strickland,* a habeas petitioner seeking to set aside his conviction on the basis of ineffective assistance of counsel must first show that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. In determining reasonableness, the courts must be deferential to counsel's judgment:

> Because of the difficulties inherent in making the evaluation [of effectiveness], a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* at 689, 104 S.Ct. 2052.

Second, the petitioner must demonstrate that the errors, if any, prejudiced his defense: "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. A "reasonable probability" demands "a probability sufficient to undermine confidence in the outcome [of the case]." *Id.* The petitioner must satisfy both prongs of the test in order to establish ineffective assistance of counsel. In *Strickland,* the court determined that:

> "although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insuf-

ficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697, 104 S.Ct. 2052.

In its analysis of the present petition, the court deals only with the second prong of the *Strickland* test. Here, Purdy must show that there is a reasonable probability that, but for the alleged incompetence of Zeldes, he would have accepted an early plea offer and received a lesser sentence. *Id.* at 694, 104 S.Ct. 2052. Furthermore, Purdy cannot show merely that the errors created a possibility of prejudice; he must demonstrate that the errors "worked to his actual and substantial disadvantage." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

Purdy argues that Zeldes failed to disclose Califano's remarks that "the case would probably go to [j]udge Burns and he didn't know of any case where a white collar criminal with those guidelines had gone to jail with [j]udge Burns or [j]udge Dorsey." Zeldes did not communicate Califano's exact statement to Purdy because Zeldes had recently represented a white collar defendant who received a four and a half year sentence from judge Burns. Further, the record reflects that Zeldes did properly communicate the government's position to Purdy. Zeldes specifically stated to Purdy in several memorandums that "on a plea of guilty, the charge would be limited to a single count and the likely period of incarceration would be between 18 to 24 months, with the *possibility, but not the certainty, of a lesser sentence.*" (emphasis added). Purdy admits that he never explored with Zeldes the ramifications of Zeldes statement concerning the possibility of a lesser sentence. Califano had maintained throughout that the government in all events would be

seeking a period of incarceration. This fact was communicated to Purdy.

Purdy further argues that it was not until March 19, 1996, on the eve of trial, that Zeldes mentioned that the government sought his cooperation. Purdy contends that Zeldes relayed to him that the government only wanted information about higher-ups in the company. Purdy claims that he had no knowledge concerning higher-ups, but had he known that the government wanted other information, he could have cooperated at that time and successfully reduced his sentence. Had he "thought it would have done him any good," Purdy claims that he would have delivered the requested information and "asked Zeldes to take advantage of [an] opportunity to cooperate."

The court finds that this argument is without merit. *On April 6, 1995,* Zeldes conveyed to Purdy the contents of a memorandum dated *March 27, 1995* concerning the government's position on cooperation. The memorandum contained the following statement: "[i]f there's a plea, Mr. Califano expects that Mr. Purdy will have to disclose what he did with respect to payments to Pratt & Whitney and G.E. and any other companies, as well as his direct sales to the U.S.A." The memorandum further provides that "Mr. Califano said that it would be necessary to fully cooperate if Mr. Purdy entered a plea and say what he knew about the agent and what he knew about other matters." Purdy vehemently denied that an agent tipped him off, and although he knew about important useful information at the time of this request for cooperation, he stoutly maintained his innocence.

Purdy next argues that Zeldes "never discussed with [him] the fact that the evidence pointed to [his] guilt and pressed [him] in any way to explain any of the incriminating facts or to consider a guilty plea." The court finds that this argument is also without merit. On January 16, 1996, Zeldes wrote a letter to Purdy reviewing the strength of the government's case. Zeldes carefully reviewed the charges currently pending against him, the applicable sentencing guidelines, the possibility of additional charges, and the expected difficulties in "troublesome" aspects of the case. Zeldes also informed Purdy that the government had obtained the testimony of several key figures, who planned to implicate Purdy in the kickback scheme. Specifically, Zeldes warned Purdy that he could be convicted if the jury were to believe the testimony of these key figures. Purdy once again said he "d[idn't] know what the government was talking about." In addition, Zeldes thoroughly questioned Purdy in a mock cross-examination and pressed him to explain the discrepancies between his version of the events and the government's proposed prosecution.

■ In *United States v. Gordon,* 156 F.3d 376, 380–81 (2d Cir.1998), the court concluded that: "[a defendant's] self-serving, post-conviction statement was insufficient by itself to meet [the defendant's] burden of proving the 'reasonable probability' that [the defendant] would have in fact accepted the offer." Here, the court finds that Zeldes continuously discussed the strength of the government's case with Purdy, questioned Purdy extensively on the discrepancies between his testimony and the government's evidence, and urged Purdy to consider his case carefully. Purdy's self-serving post-conviction testimony alone is insufficient to demonstrate a reasonable probability that but for Zeldes' alleged communications failure, the outcome of the case would have been different or that he would have cooperated earlier had he thought it would have done him any good.

The court does not find credible Purdy's testimony that: 1) he would have pleaded guilty had he been advised of the speculative comments made by Califano; or 2) he would have cooperated had he been advised of the government's comments. To the contrary, the record reflects that Purdy stoutly maintained his innocence of the alleged charges and his total lack of knowledge concerning the subject areas in which the government sought cooperation. The court finds that Purdy has not established the factual predicates that warrant a finding that but for the alleged incompetence of Zeldes, he would have accepted an early plea offer. Purdy is unable to show that Zeldes' representations prejudiced his defense. Because the petitioner has not satisfied the second prong of the *Strickland* test, the application for the writ of habeas corpus is denied.

## CONCLUSION

Accordingly, the petitioner's application for a writ of habeas corpus (document no. 267) is denied.