John M. PURDY, Jr., Plaintiff–Appellant,

v.

Jacob D. ZELDES, and Zeldes Needle and Cooper, Defendants–Appellees.

No. 02–7468.

United States Court of Appeals, Second Circuit.

Argued Dec. 20, 2002.

Decided Feb. 6, 2003.

As Amended Aug. 5, 2003.

John J.E. Markham, II, Markham & Read, Boston, MA, for Plaintiff–Appellant.

Eric S. Miller, Sheehey Furlong & Behm P.C., Burlington, VT, for Defendants–Appellees.

Before: FEINBERG, MESKILL and CALABRESI, Circuit Judges.

FEINBERG, Circuit Judge.

Plaintiff John Purdy appeals from a judgment of the United States District Court for the District of Vermont in his malpractice action against his former attorneys, defendants Jacob D. Zeldes and the law firm of Zeldes, Needle & Cooper, for their alleged negligent representation of Purdy in a criminal case. The district court (Sessions, J.) granted summary judgment to defendants, holding that Purdy's malpractice claims were barred by the collateral estoppel effect of an earlier habeas proceeding brought by Purdy. In that habeas proceeding, Purdy's claim that defendants had provided ineffective assistance of counsel in the criminal case was rejected both by the district court and the Second Circuit. *United States v. Purdy*, 245 F.Supp.2d 411 (D.Conn.1999); *Purdy v. United States*, 208 F.3d 41 (2d Cir.2000). In this appeal, Purdy argues that his burden of proof in the habeas suit claiming ineffective assistance of counsel was greater than his burden of proof in his current malpractice claim so that the district court erred in applying the doctrine of collateral estoppel. For the reasons stated below, we affirm.

## I. Background

### A. Conviction

In May 1996, Purdy was convicted of conspiracy to pay kickbacks in violation of the Anti–Kickback Act, 41 U.S.C. § 51–58. As President and CEO of Purdy Corporation, a company that manufactures parts and components for military aircraft, Purdy fell into the practice, apparently widespread in the industry at the time, of paying bribes to purchasing agents in order to secure contracts. Upon learning of a government investigation into these practices, Purdy hired defendants Zeldes and his law firm to represent him. Purdy was eventually indicted and brought to trial in the United States District Court for the District of Connecticut. However, he steadfastly maintained his innocence of the charges both to prosecutors and his attorneys. Although there were discussions between Zeldes and prosecutor Mark Califano about a possible plea, Purdy made the decision to proceed to trial. After a jury found Purdy guilty, the court sentenced him to 37 months in prison in December 1996.[1] His sentence also included a fine of $250,000 and 400 hours of community service.

### B. Habeas Proceeding

After his conviction and an unsuccessful appeal to this court, *United States v. Purdy*, 144 F.3d 241 (2d Cir.1998), Purdy discovered that during plea negotiations Califano had remarked to Zeldes that his case would probably be assigned to Judge Burns and that Califano "didn't know of any case where a white collar criminal with [Purdy's] guidelines had gone to jail with Judge Burns or Judge Dorsey." Zeldes, however, never told Purdy of the prosecu-

---

1. Purdy's sentence was later reduced to 18 months due to his cooperation with the government more than one year after his sentence.

tor's comment and informed Purdy instead that on a plea of guilty "the likely period of incarceration would be between 18 and 24 months, with the possibility, but not the certainty, of a lesser sentence." Purdy also alleges that as a result of the government's investigation, 29 other first-time offenders were charged with similar crimes. According to Purdy, each of the 29 defendants pled guilty and received probationary sentences and relatively small fines.

Based on this information, in March 1999 Purdy filed a petition for a writ of habeas corpus, 28 U.S.C. § 2255, in the District Court of Connecticut alleging ineffective assistance of counsel. Purdy argued that Zeldes's representation was constitutionally deficient because Zeldes failed to fully and adequately inform him about plea discussions with prosecutor Califano, and Zeldes did not provide Purdy with adequate advice about his plea options. Purdy also argued that had Zeldes fully informed him of the prosecutor's opinion and the results of the cases against the 29 other defendants, he would have pled guilty and his sentence would have been much less than the 37 months he received after trial. During the Connecticut habeas proceeding before Chief Judge Covello, Zeldes admitted that Califano made the above remarks to him and that he did not inform Purdy of the prosecutor's opinion.[2] However, Zeldes defended his decision not to inform Purdy of the prosecutor's statement on the grounds that there was no certainty that the case would be assigned to either Judge Burns or Judge Dorsey; that Zeldes had recently represented a client who was sentenced to 4½ years in prison by Judge Dorsey in a white collar case; and that he did not want to coerce a

client who continued to maintain his innocence into making a guilty plea.

The habeas court analyzed Purdy's claims under the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The court held that in order to make out a claim for ineffective assistance of counsel under *Strickland*, Purdy had to show "that his counsel's performance was deficient" and "that this deficient performance prejudiced the defense." 245 F.Supp.2d at 414. The habeas court held that because Purdy was unable to show that Zeldes's representation prejudiced his defense, he was not entitled to habeas relief. The court stated that it did not "find credible Purdy's testimony that: 1) he would have pleaded guilty had he been advised of the speculative comments made by Califano; or 2) he would have cooperated had he been advised of the government's comments." *Id.* at 417.

On appeal, this court considered at length *Strickland*'s first prong—whether Zeldes's representation was deficient. We held that the habeas court was correct in concluding that, "[b]ecause Zeldes did not place an absolute floor under the sentence of 18 months but suggested the 'possibility, but not a certainty' of a lower term, . . . Zeldes's communications adequately conveyed the government's position." 208 F.3d at 45. We also concluded that "it was reasonable for Zeldes not to have told Purdy of Califano's comment" and that Zeldes's decision not to explicitly advise Purdy whether or not to make a guilty plea was "within the range of professional reasonableness." *Id.* at 45–46. We also found no basis to "upset the [habeas] court's credibility determination of Purdy's post-conviction testimony" or its holding

---

**2.** There is no factual dispute about the content of the conversations between Zeldes and the prosecutor, nor is there any dispute about

what information was actually conveyed by Zeldes to Purdy.

that Purdy failed to establish prejudice. *Id.* at 49.

## C. Malpractice Action

After losing his appeal from denial of habeas relief, Purdy brought this malpractice action against Zeldes and his firm in the District Court of Vermont.[3] In his complaint, Purdy alleged essentially the same deficiencies in defendants' representation of him in the criminal case.[4] Purdy argued that Zeldes was negligent (1) by failing to discover and disclose that 29 other persons charged with the same offense as Purdy avoided any prison sentence by pleading guilty; (2) by failing to disclose Califano's statements; and (3) by failing to advise Purdy post-sentencing that he could still cooperate and receive a reduction in his sentence. Defendants moved for summary judgment, arguing that Purdy had a full and fair opportunity to litigate the first two issues before the habeas court and was therefore collaterally estopped from bringing them again in a malpractice action. As to the third claim, Zeldes argued that Purdy did not suffer any harm because he eventually did receive a reduced sentence for cooperating with the government. Judge Sessions agreed on the issue of collateral estoppel, holding:

> [I]n the circumstances of this case, where both the district court and the Second Circuit found that Purdy had failed to establish prejudice under *Strickland,* Purdy is now collaterally estopped from re-litigating the issues presented in his habeas petition in this action.

**3.** Purdy, a Vermont domiciliary, brought the action in the Vermont district court on the basis of diversity jurisdiction.

**4.** Purdy's initial malpractice complaint raised claims for attorney malpractice, breach of fiduciary duty, and misrepresentation. How-

*Purdy v. Zeldes,* 166 F.Supp.2d 935, 943 (D.Vt.2001).

However, the judge held that defendants were not entitled to summary judgment on Purdy's post-sentence claim of negligence. *Id.* This appeal followed.

## II. Discussion

### A. Jurisdiction

Prior to reviewing the Vermont district court's decision on collateral estoppel, we must consider whether we have jurisdiction over this appeal. The court granted summary judgment to defendants only on plaintiff Purdy's two claims arising from Zeldes's pre-sentencing representation. The court denied summary judgment without prejudice "with respect to Purdy's allegation that Zeldes failed to accurately inform or represent him regarding his post-sentence cooperation opportunities." 166 F.Supp.2d at 944. However, after some discovery, Purdy decided he did not wish to pursue this remaining claim by itself. He therefore moved to dismiss that claim without prejudice to refiling it if, but only if, the dismissal of his first two claims was reversed on appeal. The district court granted the motion and dismissed the case with that condition.

In *Chappelle v. Beacon Communications Corp.,* 84 F.3d 652 (2d Cir.1996), we held that a plaintiff could not appeal an adverse decision on some of her claims by simply voluntarily dismissing her remaining claims without prejudice. We explained the reasoning behind such a rule as follows:

ever, the Vermont district court treated all the claims as a malpractice action and the parties do the same in their briefs before this court. We therefore analyze all of Purdy's claims as a claim for legal malpractice.

A plaintiff's attempt to appeal a prior adverse determination following the dismissal of his remaining claims without prejudice necessarily implicates the policies of the final judgment rule. Allowing such an appeal following a voluntary dismissal with prejudice ... furthers the goal of judicial economy by permitting a plaintiff to forgo litigation on the dismissed claims while accepting the risk that if the appeal is unsuccessful, the litigation will end. By contrast, because a dismissal without prejudice does not preclude another action on the same claims, a plaintiff who is permitted to appeal following a voluntary dismissal without prejudice will effectively have secured an otherwise unavailable interlocutory appeal.

*Id.* at 654. Thus, when a plaintiff is completely free to relitigate voluntarily dismissed claims, the final judgment rule ordinarily precludes this court from reviewing any adverse determination by the district court in that case. However, where, as here, a plaintiff's ability to reassert a claim is made conditional on obtaining a reversal from this court, the finality rule is not implicated in the same way. Unlike the plaintiff in *Chappelle*, Purdy runs the risk that if his appeal is unsuccessful, his malpractice case comes to an end. We therefore hold that a conditional waiver such as Purdy's creates a final judgment reviewable by this court.

B. Collateral Estoppel

 We review *de novo* the district court's grant of summary judgment on the basis of collateral estoppel. See *Boguslavsky v. Kaplan*, 159 F.3d 715, 719 (2d Cir.

1998). The doctrine of collateral estoppel prevents a plaintiff from relitigating in a subsequent proceeding an issue of fact or law that was fully and fairly litigated in a prior proceeding. See *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002). Under federal law,[5] collateral estoppel applies when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."[6] *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir.1997) (internal quotation marks omitted).

 There is considerable overlap between the issues previously litigated and resolved in Purdy's habeas petition and those he attempts to raise as malpractice claims. In order to prevail on his legal malpractice claims under Vermont law, which the parties agree provides the substantive law in this diversity case, Purdy must show that his attorney was negligent and that the negligence proximately caused him harm. *Powers v. Hayes*, 172 Vt. 535, 536, 776 A.2d 374 (2001). These elements appear to mirror the two prongs of the *Strickland* test—deficient attorney representation and prejudice—used by the habeas court to deny Purdy habeas relief.

 Nevertheless, Purdy argues that his present claims should not be barred as a matter of law because he faced a higher burden in proving constitutional ineffective assistance of counsel in his habeas action than he will in proving his attorney's negli-

5. It is well established that federal law on collateral estoppel applies to determine the preclusive effect of a prior federal judgment. See *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir.2002); *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 42 (2d Cir.1986).

6. In this Circuit, each of two alternative, independent grounds for a prior holding is given effect for collateral estoppel purposes. *Gelb*, 798 F.2d at 45.

gence in a malpractice action under Vermont tort law. Indeed, this court has recognized that a litigant's failure to meet a higher burden of proof on an issue in a prior proceeding does not bar him from raising the same issue in a subsequent proceeding in which his burden will be lighter. *Torrington Extend–A–Care Employee Ass'n v. NLRB*, 17 F.3d 580, 594 (2d Cir.1994); *Neaderland v. C.I.R.*, 424 F.2d 639, 641–43 (2d Cir.1970). Thus, whether collateral estoppel applies to Purdy's malpractice claims turns on the standard of proof actually applied in denying his habeas petition.

Specifically, Purdy argues that in determining that he could not show prejudice, the habeas court strictly applied the "objective evidence rule." According to Purdy, in the context of a defendant's claim that he would have accepted a plea offer had his lawyer adequately explained its actual terms, the objective evidence rule requires a defendant to produce some evidence beyond his own testimony in order to show prejudice under *Strickland.* Purdy points out that the habeas court cited *United States v. Gordon*, 156 F.3d 376 (2d Cir.1998), for the proposition that "[a defendant's] self-serving, post-conviction statement was insufficient by itself to meet [the defendant's] burden of proving the reasonable probability that [the defendant] would have in fact accepted the offer." 245 F.Supp.2d at 416 (quoting *Gordon*, 156 F.3d at 380–81). Purdy argues that although the habeas court could not properly find prejudice, a jury in a malpractice proceeding would be free to credit his testimony without the use of objective evidence and could therefore find that Zeldes's alleged negligence caused him harm.

The district court rejected Purdy's arguments. The court noted that *Gordon* itself did not necessarily adopt the strict objective evidence test Purdy defends. It also held that even if the "objective evidence rule" were applicable, the habeas court's decision did not rest on that basis. Although the habeas court cited *Gordon*, that court also went on to make an unfavorable credibility finding with regard to Purdy's testimony. The district court in this case thus held that "even absent any application of an 'objective evidence' rule, it seems clear that the habeas court would have rejected Purdy's contention that he was prejudiced by Zeldes' alleged errors." 166 F.Supp.2d at 942.

■ The district court's reasoning is sound. We agree with Purdy that some courts appear to have cited *Gordon* for a strict objective evidence rule, see, e.g., *Khan v. United States*, 2000 WL 1738414, at *7 (S.D.N.Y. Nov.22, 2000) (citing *Gordon* for the proposition that "it is incumbent on the petitioner to show 'objective evidence' beyond unsubstantiated, 'self-serving, post-conviction testimony' "); *Slevin v. United States*, 71 F.Supp.2d 348, 357 (S.D.N.Y.1999) (citing the objective evidence rule as an "evidentiary prerequisite"). However, the better reading of *Gordon* is a simple recognition that in most circumstances a convicted felon's self-serving testimony is not likely to be credible. This does not relieve habeas courts of their responsibility to actually make a credibility finding in each case, even absent objective evidence. See *Cullen v. United States*, 194 F.3d 401, 407–08 (2d Cir.1999) (instructing the district court that "[t]hough a claim that [the defendant] would have accepted the plea would be self-serving (like most testimony by witnesses who are parties), it ought not to be rejected solely on this account. . . . The credibility determination should be based on all relevant circumstances."). The habeas court explicitly made a credibility finding against Purdy, 245 F.Supp.2d at 417, and on appeal this court held that "[t]here is no reasonable basis for us to

upset the district court's credibility determination." 208 F.3d at 49. It seems clear to us that neither court relied on any particular presumption against Purdy in making these findings.

In addition, even Purdy's reading of the objective evidence rule could not save his malpractice claims on this appeal. The habeas court necessarily considered two pieces of objective evidence Purdy used to support his testimony that he would have accepted a guilty plea but for Zeldes's alleged deficient representation. First, Purdy offered evidence of the vast difference between his actual sentencing exposure following trial (imprisonment for 37 months) and the likely sentencing exposure he would have faced if he had pled guilty (no imprisonment). Under our decision in *Mask v. McGinnis*, "[t]his disparity ... satisfies the prejudice requirement that we articulated in *Gordon.*" 233 F.3d 132, 141–42 (2d Cir.2000). Second, to support his testimony, Purdy produced evidence that each of the 29 other similarly situated defendants all accepted plea offers and all avoided jail time.

Once Purdy produced this objective evidence, *Gordon's* supposed higher standard of proof did not apply and the habeas court was required to determine whether on the record as a whole Purdy had established "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. The habeas court made this determination when it found that "Purdy has not established the factual predicates

that warrant a finding that but for the alleged incompetence of Zeldes, he would have accepted an early plea offer." 245 F.Supp.2d at 417. Furthermore, the standard of proof applied by the habeas court was, if anything, lower than the preponderance of the evidence standard applicable in a civil malpractice action. See *Lindstadt v. Keane,* 239 F.3d 191, 204 (2d Cir. 2001) ("The level of prejudice the defendant need demonstrate lies between prejudice that 'had some conceivable effect' and prejudice that 'more likely than not altered the outcome in the case.' "); *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052 ("The result of a [criminal] proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.").[7]

A remand of Purdy's malpractice claims to the Vermont district court would require a second determination of whether Purdy suffered harm from Zeldes's alleged deficient representation. The doctrine of collateral estoppel is meant to foreclose this type of duplicative litigation. We therefore hold that on this record Purdy is barred by the decision of the habeas court from bringing his current malpractice action.

For the foregoing reasons, we affirm the district court's grant of summary judgment to defendants.

---

**7.** We note that neither the *Lindstadt* court nor the Supreme Court in *Strickland* had before it the issue of whether the burdens of proof in a habeas proceeding are higher than the burdens in a civil malpractice action. Although it is clear on this record that Purdy is collaterally estopped from bringing his malpractice claim, we need not decide whether malpractice claims are always precluded by prior

habeas adjudications of ineffective assistance of counsel. Collateral estoppel in this context is a fact intensive inquiry that is best determined on a case-by-case basis. As the district court stated, "the collateral estoppel effect of the prior proceeding may depend on the specific approach taken by the courts addressing the petition in a particular case." 166 F.Supp.2d at 943.