Mashiska I. WASHINGTON, Plaintiff,

v.

**UNITED STATES TENNIS ASSOCIATION, INC.,**
Defendant.

No. 02 CV 4721(JG).

United States District Court,
E.D. New York.

Sept. 29, 2003.

Sandra D. Frelix, Esq., New York City, for Plaintiff.

J. Scott Dyer, Esq., Simpson Thatcher & Bartlett LLP, New York City, for Defendant.

*MEMORANDUM AND ORDER*

GLEESON, District Judge.

Plaintiff Mashiska I. Washington brings this suit against defendants United States Tennis Association (the "U.S.T.A.") and the United States Open Tennis Championship [1] alleging discrimination in a place

---

1. The U.S. Open is not an independent entity; it is an event, run by the U.S.T.A., and is therefore incapable of being sued. Accord-

of public accommodation and violations of federal and state antitrust laws. The case initially appeared to be a retread of an unsuccessful case challenging the U.S.T.A.'s refusal to give Washington a "wild card" entry into the 1998 U.S. Open championship. At oral argument, it was described by plaintiff's counsel as something else altogether, as described more fully below.

The U.S.T.A. has moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on issue and claim preclusion grounds and on the ground that the complaint fails to state claims on which relief can be granted. For the following reasons, the motion is granted in that any claims based on the U.S.T.A.'s refusal to give Washington a wild card entry into the 1998 U.S. Open are dismissed. To the extent Washington seeks to allege claims based on events subsequent to the 1998 tournament, the complaint is dismissed without prejudice. If Washington persists in pursuing the case, he must file an amended complaint setting forth more clearly what those claims are.

### BACKGROUND

#### A. Washington I

In July 2002, Washington brought a case against the U.S.T.A. pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et. seq., alleging that it had discriminated against him on grounds of race when it failed to give him a wild card entry in the 1998 U.S. Open. *See Washington v. United States Tennis Ass'n,* No. 99–CV–5148 (JG), 2002 WL 1732801, at *1 (E.D.N.Y. July 22, 2002) (*"Washington I"*). At that time, wild cards were awarded by the U.S.T.A. to players who did not qualify on ranking alone for the U.S. Open. The U.S.T.A. had discretion over 13 of the 17 wild cards, and

a committee chose the recipients based on various criteria. During the period from 1993 through 1998, no one received more wild card entries into the U.S. Open (or its qualifying rounds) than Washington. In every year except 1998, he received a wild card. In 1998, unlike in prior years, he showed no significant improvement in his world ranking, and thus he was not offered a wild card. He received wild cards again in 1999 and 2000.

On July 22, 2002, I granted the U.S.T.A.'s motion for summary judgment on the following grounds:

1. Washington was not an "employee" of the U.S.T.A. within the meaning of Title VII.

1. Washington had not made out a prima facie case of disparate treatment on the basis of race. He failed to show either direct evidence of race discrimination or circumstances that would permit an inference of such discrimination. Indeed, Washington had received seven wild cards in a ten-year period.

2. Washington had not established a prima facie case that the practices or policies of the U.S.T.A. had a disparate impact on African–American players. He had not provided statistical evidence to back up his allegation of such an impact, nor was he able to point to a causal connection between wild card distribution and race discrimination.

In my decision granting summary judgment, I also denied Washington leave to amend his complaint. He had sought leave to amend to assert a claim under 42 U.S.C. § 1981, based on a theory of "commercial nepotism." Plaintiff's Resp. to Defs.' Summ. J. Mot. in *Washington I.* His

ingly, the sole defendant in this case is the    U.S.T.A.

theory was that control by sports marketing agents over wild card distribution has a racially discriminatory impact on African–Americans because the agents' clients are predominantly Caucasian. I denied the plaintiff leave to amend because commencing a new discovery period to permit Washington to seek support for his theory would have unduly prejudiced the U.S.T.A.

### B. *The Instant Case*

Washington filed this action in September 2002. He now alleges that the U.S.T.A. has violated the Civil Rights Act's prohibition on discrimination in a place of public accommodation, *see* 42 U.S.C. §§ 2000a–2000a–6, by allowing sports marketing agencies to control the distribution of wild cards to the predominantly Caucasian players they represent. Washington also alleges that the agencies' conduct gives an unfair advantage to players with agents, effectively excluding the plaintiff and other unrepresented African–American players. Plaintiff further argues that U.S.T.A.'s acquiescence in the agencies' behavior violates the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, the Federal Trade Commission Act, 15 U.S.C. § 45, and the following antitrust laws: the Sherman Act, 15 U.S.C. §§ 1 & 2, the Clayton Act, 15 U.S.C. § 18; and the Donnelly Act, N.Y. General Business Law §§ 340–347 (Consol.2003).

Defendant moves to dismiss on the following grounds: (1) the plaintiff's claims are precluded by principles of res judicata and collateral estoppel; and (2) the plaintiff's allegations fail to state claims upon which relief may be granted.

### DISCUSSION

### A. *The Motion to Dismiss Standard*

On a motion to dismiss, the court must "accept as true those factual assertions set forth in plaintiff's complaint ... and [ ] read the complaint liberally, drawing all reasonable inferences in plaintiff's favor." *Charles W. v. Maul*, 214 F.3d 350, 356 (2d Cir.2000). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

In ruling on a motion to dismiss, I am limited to examining only material in the pleadings. *Kramer v. Time Warner*, 937 F.2d 767, 773 (2d Cir.1991). I am, however, permitted to take judicial notice of court documents from previous actions. *Id.; Marchon Eyewear, Inc. v. Tura L.P.*, No. 98 CV 1932(SJ), 1999 WL 184107, at *2 (E.D.N.Y. Mar. 28, 1999) (relying on pleadings and judgments in a prior action in granting a motion to dismiss on preclusion grounds.)

### B. *Collateral Estoppel and Res Judicata*

The doctrine of collateral estoppel, or issue preclusion, "precludes a party from relitigating in a subsequent action an issue that was clearly raised in a prior action and decided against that party." *Foceri v. Allstate Ins.*, No. 97 CV 540(SJ), 1999 WL 31128, at *2 (E.D.N.Y. Jan. 14, 1999). An issue is barred if "(1) the identical issue was raised in a previous proceeding; (2) the issue was 'actually litigated and decided' in the previous proceeding; (3) the party had a 'full and fair opportunity' to litigate the issue; and (4) the resolution of the issue was 'necessary to support a valid and final judgment on the merits.' " *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir.1997) (quoting *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir.1995)).

The related doctrine of res judicata ensures that "once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the [first] action arose." *Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 205 (2d Cir.2002) (quoting *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir.1997)) (internal quotation marks omitted). Furthermore, "claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *L–Tec Elecs. v. Cougar Elec. Org.*, 198 F.3d 85, 88 (2d Cir.1999).

■ Obviously, to the extent they are based on the U.S. Open wild card decisions in 1998, Washington's claims are barred by these doctrines. In *Washington I*, he alleged that the U.S.T.A. had discriminated against him in its distribution of wild card entries in the 1998 U.S. Open. To prove discrimination in a place of public accommodation, he would have to offer sufficient evidence of disparate treatment to imply a discriminatory intent on the part of the defendant. *Lizardo v. Denny's*, 270 F.3d 94, 101 (2d Cir.2001). However, he is precluded from doing so by my conclusion in *Washington I* that there was neither direct nor circumstantial evidence from which a rational finder of fact could infer discriminatory intent. *Washington I*, 2002 WL 1732801, at *3. Although I granted summary judgment for the defendant in *Washington I* on the alternate ground that Washington was not an "employee" for the purposes of a Title VII claim, the Second Circuit rule is that "each of two alternative, independent grounds for a prior holding is given effect for collateral estoppel purposes." *Purdy v. Zeldes*, 337 F.3d 253,

258 n. 6 (2d Cir.2003). Because the plaintiff had the opportunity to litigate this issue and because its resolution was necessary to the judgment, collateral estoppel applies.

■ Any claims based on the 1998 tournament are also precluded under the doctrine of res judicata because they could have been brought in *Washington I. L–Tec Elecs.*, 198 F.3d at 87–88. ("The doctrine of *res judicata*, or claim preclusion, prevents a plaintiff from relitigating claims that were or could have been raised in a prior action against the same defendant where that action has reached a final judgment on the merits."). Indeed, Washington attempted to raise his "commercial nepotism" theory, referenced in the complaint and recast here as an antitrust theory, in *Washington I* via a proposed amendment to the complaint.

At oral argument on September 2, 2003, plaintiff's counsel, Sandra D. Frelix, Esq., conceded that any claims based on the 1998 tournament are barred.[2] Indeed, counsel asserted that the complaint never alleged any such claims. *See* Sept. 2, 2003 Transcript at 15–16. That contention is simply disingenuous. The complaint is opaque, deliberately so, with regard to dates, and I (like defense counsel) assumed it referred to the 1998 tournament. Moreover, plaintiff's counsel did not, even in the face of a motion to dismiss on collateral estoppel and res judicata grounds, state in her opposition papers that the complaint was not based on the 1998 tournament. Counsel's decision to wait until oral argument to assert that the complaint was "absolutely not" based, at least in part, on the 1998 tournament resulted in a needless waste of the Court's and the defendant's time.

---

**2.** As mentioned above, Washington received a wild card in 1993, 1994, 1995, 1996, 1997,

1999 and 2000. He did not receive a wild card entry in 2001, 2002 or 2003.

Equally as troubling are plaintiff's counsel's statements about what the case is really about. When pressed to identify the wrongs that give Washington standing to bring this case, counsel stated that marketing agents "buy and sell wild cards" and give them to their own clients. *Id.* at 19. This occurs not in the U.S. Open, according to counsel, but in various other tournaments that the U.S.T.A. does not even run. Because, according to counsel, the U.S.T.A. "set[s] the tone" for those other tournaments, it is liable. *Id.*

When pressed further on the theory of her complaint, counsel responded as follows:

> MS. FRELIX: Alice Marble in the July 1950 American Lawn Tennis Magazine stated it the best.
>
> THE COURT: When is this?
>
> MS. FRELIX   July 1950.
>
> THE COURT: '50.
>
> MS. FRELIX   1950.
>
> THE COURT:   That's 53 years ago.
>
> MS. FRELIX:   Over half a century ago Ms. Marble stated basically—it wasn't the U.S.T.A., however, it was another organization that was the umbrella that handled tennis for the United States, that it was basically a racist organization. Nothing has changed. Nothing has changed.
>
> She was supporting Althea Gibson at the time in her efforts to achieve—to be able to support—play in tennis tournaments in this country. Nothing has changed.

### C. *The Appropriate Relief*

The deliberate factual vagueness of Washington's complaint caused the U.S.T.A. to rely principally on collateral estoppel and res judicata in its motion to dismiss. Accordingly, the briefing on the numerous other issues potentially raised by the complaint is not nearly as helpful as it might have been if defendant had known what the case was really about. Moreover, the gravamen of Washington's claims, as stated by counsel at oral argument, cannot be divined from the current complaint.

■ If Washington wishes to pursue this case any further, he must file an amended complaint setting forth concisely the basis of his claims. If his causes of action arise out of wild card selections in tournaments for which the U.S.T.A. "sets the tone," the identities and dates of those tournaments must be included in the pleading.

■ Also, in light of the blunderbuss approach to legal theories taken in the present complaint, several comments about the causes of action it alleges seem appropriate. First, to establish a prima facie case under Section 1 of the Sherman Act, "a plaintiff must [ ] show (1) a contract, combination, or conspiracy; (2) in restraint of trade; (3) affecting interstate commerce." *Maric v. St. Agnes Hosp. Corp.,* 65 F.3d 310, 313 (2d Cir.1995). In order to survive a motion to dismiss, plaintiffs cannot rely on conclusory allegations alone to establish a prima facie case, but must have some "specific facts or circumstances" to offer. *De Jesus v. Sears. Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir.1996); *see also Marchon Eyewear v. Rothanberg, Inc.,* 2002 WL 31253199 (E.D.N.Y. Sept. 30, 2002). "Conclusory allegations which merely recite the litany of antitrust will not suffice; the Court may insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* at *3 (internal quotation marks and citation omitted).

■ Second, to state a claim under Section 2 of the Sherman Act, Washington must allege that defendant has monopoly

power or has attempted to gain monopoly power. Monopolization under this section has two parts: " 'the possession of monopoly power in the relevant market [ ] and ... the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.' " *Yankees Entm't & Sports Network, LLC v. Cablevision Sys. Corp.,* 224 F.Supp.2d 657, 666 (S.D.N.Y. 2002). To allege attempted monopolization, plaintiff must claim "(1) that the defendant has engaged in predatory or anti-competitive conduct with (2) a specific intent to monopolize and (3) dangerous probability of achieving monopoly power." *Id.* (internal quotation marks and citations omitted).

■ Third, Section 7 of the Clayton Act, which is codified at 15 U.S.C. § 18,[3] prohibits parties from creating an anti-competitive or monopolistic effect by acquiring stock or assets of companies or individuals in commerce. 15 U.S.C. § 18. It requires the acquisition of stock or assets.

■ Fourth, there is no private action for damages under the Commerce Clause. "Congress' power to regulate commerce under Art. I, § 8, Cl. 3 of the Constitution does not furnish an independent remedy for alleged discrimination." *Ghaznavi v. Days Inn of Am.,* No. 91 CIV 4520(MBM), 1993 WL 330477 at *2 (S.D.N.Y. Aug. 20, 1993). The same is true with respect to the Federal Trade Commission Act, which does not create a private right of action for damages. *Naylor v. Case & McGrath, Inc.,* 585 F.2d 557, 561 (2d Cir.1978).

---

**3.** However, it should be noted that plaintiff incorrectly cites Section 7 of the Clayton Act

*CONCLUSION*

This is Washington's second action against the U.S.T.A. Although both cases ostensibly arose out of Washington's treatment at the hands of the U.S.T.A., his attorney's description of the gravamen of his complaints suggests to me that Washington's dispute, if indeed he has a dispute at all, is with sports marketing agents, not the U.S.T.A. In any event, a 53 year-old statement that some other tennis association was "basically a racist organization" is not a legitimate basis, factually or legally, to commence an action.

Before deciding to file an amended complaint, I encourage counsel for Washington to consider her obligations under Fed. R.Civ.P. 11 and 28 U.S.C. § 1927. If, after doing so, she decides to file the amended complaint, it shall be filed on or before October 24, 2003.

So Ordered.