21-2641, 21-2643
*Scottsdale Ins. Co. v. McGrath*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2022

(Argued: October 26, 2022     Decided: December 11, 2023)

Docket Nos. 21-2641, 21-2643

SCOTTSDALE INSURANCE COMPANY,

> *Plaintiff–Counter-Defendant–*
> *Appellant–Cross-Appellee,*

–v.–

PATRICK M. MCGRATH,

> *Defendant–Third-Party-Plaintiff–*
> *Counter-Claimant-Appellee–Cross-*
> *Appellant,*

AH DB KITCHEN INVESTORS LLC, CASTLEGRACE EQUITY INVESTORS, LLC,

> *Defendants–Third-Party-Plaintiffs–*
> *Counter-Claimants-Appellees,*

CRAVEABLE HOSPITALITY GROUP, FKA WATERSHED VENTURES, LLC,

> *Third-Party-Defendant–Appellee.*

Before:

LOHIER, CARNEY, and MERRIAM, *Circuit Judges*.

———————

In this insurance coverage dispute, Watershed Ventures, LLC ("Watershed") and Patrick M. McGrath formed a joint venture that eventually failed and filed for bankruptcy. The ensuing litigation included claims asserted by the bankruptcy trustee (the "Trustee") against McGrath personally and against two investment vehicles that he controlled (together, "Defendants"). In connection with that litigation, Defendants sought coverage from Watershed's insurer, Scottsdale Insurance Company ("Scottsdale"), under a directors and officers liability policy (the "Policy"). Scottsdale denied coverage and filed this action seeking a declaratory judgment as to its coverage obligations. McGrath asserted counterclaims against Scottsdale, seeking damages above policy limits, and third-party claims against Watershed.

The district court (Liman, *J.*) issued two summary judgment decisions. The first denied Scottsdale's motion for summary judgment and ruled that McGrath is an Insured under the Policy, while the second dismissed one of McGrath's counterclaims and his prayer for damages above policy limits, thus leaving for trial the issue whether the Trustee's claims against McGrath were covered by the Policy.

In lieu of proceeding to trial, the parties entered into and the district court approved a "Stipulated Conditional Final Judgment Subject to Reservation of Rights of Appeal" (the "SCF Judgment"). In it, Scottsdale and Defendants agreed that if, on appeal, either of the district court's two summary judgment rulings was even partly vacated or reversed, the SCF Judgment would become void in its entirety and the damages and attorneys' fees stipulations contained in it would have no effect. The district court entered the SCF Judgment.

The parties now seek review of the two summary judgment decisions, on the premise that the SCF Judgment is a "final decision[]" appealable under 28 U.S.C. § 1291. We are not persuaded. The SCF Judgment does not resolve all claims of all parties to the suit; it was not and could not be entered under Fed. R. Civ. P. 54(b); and it does not finally resolve the core substantive question whether Scottsdale breached its duty to defend under the Policy. Accordingly, we DISMISS both Scottsdale's appeal and McGrath's cross-appeal for want of appellate jurisdiction.

APPEALS DISMISSED.

———————

2

ALEXIS J. ROGOSKI (Juan Luis Garcia, *on the brief*), Skarzynski Marick & Black LLP, New York, NY, *for Scottsdale Insurance Company*

LUKE A. MCGRATH (Christopher M. W. Pioch, *on the brief*), Dunnington Bartholow & Miller LLP, New York, NY, *for Patrick M. McGrath*

—————————

CARNEY, *Circuit Judge*:

This case concerns an attempt to seek appellate review of district court decisions that were not "final" under 28 U.S.C. § 1291.

The issue arises in the context of an insurance coverage dispute stemming from a joint venture between Watershed Ventures, LLC ("Watershed") and Patrick M. McGrath ("McGrath") that was aimed at opening a restaurant and cocktail lounge in Aspen, Colorado. The joint venture—Rocky Aspen, LLC—failed and filed for bankruptcy in March 2016. The bankruptcy trustee (the "Trustee") then filed adversary proceedings against McGrath and two entities that he controls: AH DB Kitchen Investors LLC ("AH DB") and Castlegrace Equity Investors, LLC ("Castlegrace") (the three together, "Defendants").

In connection with that litigation, Defendants sought coverage from Watershed's insurer, Scottsdale Insurance Company ("Scottsdale"), under a policy that Scottsdale issued for a certain one-year period (the "Policy").[1] Scottsdale declined coverage and then brought this action in the United States District Court for the Southern District of New York seeking, among other things, a judgment declaring that it has no duty to

---

[1] This was Business and Management Indemnity Policy number EKS3172343, which Scottsdale issued to Watershed for the period from November 6, 2015, to November 6, 2016.

3

defend Defendants under the Policy. McGrath in turn asserted counterclaims against Scottsdale and brought a third-party complaint against Watershed.

In June 2020, Scottsdale moved for summary judgment, arguing, in relevant part, that McGrath was not an Insured[2] under the Policy during the relevant time period. The district court (Liman, *J.*) denied Scottsdale's motion. *See Scottsdale Ins. Co. v. McGrath*, 506 F. Supp. 3d 216 (S.D.N.Y. 2020) (the "First Order"). Scottsdale subsequently sought partial summary judgment on McGrath's counterclaim for bad faith breach of an insurance contract and on his request for consequential and punitive damages above applicable policy limits. The district court granted this motion. *See Scottsdale Ins. Co. v. McGrath*, 549 F. Supp. 3d 334 (S.D.N.Y. 2021) (the "Second Order") (together with the First Order, the "Summary Judgment Orders").

In lieu of proceeding to trial, the parties filed a proposed "Stipulated Conditional Final Judgment Subject to Reservation of Rights of Appeal." Special App'x 54–57 (the "SCF Judgment"). In the SCF Judgment, the parties agreed that if, on appeal, either of the district court's two summary judgment rulings was even partly vacated or reversed, the SCF Judgment would become void in its entirety and the damages and attorneys' fees stipulations contained in it would have no effect. The district court "approved and ordered" that document and entered it on the docket as a final judgment. *Id.* at 58. Scottsdale appealed, and McGrath cross-appealed.

Because we conclude that the SCF Judgment is not a "final decision[]" within the meaning of 28 U.S.C. § 1291, we DISMISS both the appeal and cross-appeal for want of jurisdiction.

---

[2] For convenience, we capitalize the Policy's terms Insured, Subsidiary, and Wrongful Acts in this opinion without further citation.

## I.   Rocky Aspen

In April 2013, Watershed and McGrath formed the joint venture Rocky Aspen, aiming to "open and operate a full service, high quality, fine dining, restaurant" and "a full service, first class, upscale, cocktail lounge" in Aspen, Colorado. App'x 166. Watershed exercised its interest in the venture through its wholly owned subsidiary, Rocky Aspen Management 204 LLC ("RAM 204"). McGrath held his interest through AH DB.[4] Under an operating agreement entered into by RAM 204 and AH DB (the "Operating Agreement"), each entity had a 50% voting percentage interest in the venture. RAM 204 and AH DB were each also entitled to appoint one co-manager of Rocky Aspen. AH DB appointed McGrath, and RAM 204 appointed a certain Stephen Goglia.

The Operating Agreement provided that the restaurant was to open by March 25, 2015, and that AH DB would make certain defined capital contributions to the venture by that date. AH DB's failure to do so would trigger the so-called "Watershed Option," under which RAM 204 could purchase additional economic and voting units in Rocky Aspen. *Id.* at 168–69. And once the Watershed Option became exercisable—regardless of whether RAM 204 in fact invoked it—AH DB would forfeit all of its voting units in Rocky Aspen and lose its right to appoint or replace a co-manager.

As previewed above, the Rocky Aspen venture did not pan out. AH DB failed to make its required capital contributions by March 25, 2015. The Watershed Option became exercisable by March 26, 2015. RAM 204 did not exercise its option, however,

---

[3] Unless otherwise noted, the facts set forth here are drawn from the summary judgment record and are undisputed.

[4] AH DB's sole member is Aristone Hospitality LLC, whose sole member, in turn, is McGrath.

until over nine months later, on January 5, 2016, when it purchased additional economic and voting units in Rocky Aspen and removed McGrath as a co-manager.

## II. Rocky Aspen's Bankruptcy and Defendants' Claim under the Policy

In March 2016, Rocky Aspen—then managed solely by RAM 204—filed for bankruptcy, and the Trustee was appointed. In April 2016 and then again two years later, in May 2018, the Trustee initiated adversary proceedings against McGrath, AH DB, and Castlegrace. In those proceedings, the Trustee sought to avoid two transfers, each in the amount of $700,000, which had earlier been made by Rocky Aspen to Castlegrace and Watershed, respectively. The Trustee argued that these transfers were made for the benefit of Defendants, not for Rocky Aspen, and were therefore fraudulent in the context of the ensuing bankruptcy.

In June 2019, the Trustee formally offered to settle the adversary proceedings with Defendants for $1.4 million—the full combined principal of the two allegedly fraudulent transfers. The same day, McGrath and AH DB tendered the offer to Scottsdale, claiming coverage under the Policy that Scottsdale issued to Watershed. In July, Scottsdale informed McGrath and AH DB that "no coverage is available" under the Policy. *Id.* at 231.

## III. Procedural History

In August 2019, Scottsdale initiated this action seeking a judgment declaring that it has no duty under the Policy to defend the Trustee's claims against Defendants. It gives four reasons, each corresponding to a separate count in its complaint: Defendants are not Insureds under the Policy (Count One); the underlying claims against McGrath do not allege "Wrongful Acts" within the meaning of the Policy (Count Two); the Policy's "Subsidiary Exclusion" precludes coverage (Count Three); and Defendants

6

failed to provide Scottsdale with timely notice of the Trustee's claims (Count Four). *Id.* at 21–23.

McGrath responds by asserting three counterclaims against Scottsdale: first, for a judgment declaring that he is an Insured under the Policy (Count One); second, for damages for bad faith breach of an insurance contract (Count Two); and third, for damages for breach of the duty to defend (Count Three). *Id.* at 94–98. McGrath also brings related claims against Watershed as a third-party defendant. *Id.* at 99–101. Finally, McGrath seeks an order placing an equitable lien on the proceeds of the Policy. *Id.* at 102–03.

In June 2020, Scottsdale moved for summary judgment, arguing that Rocky Aspen became a Subsidiary of Watershed (making McGrath, as Rocky Aspen's co-manager, an Insured) only as of January 5, 2016, when RAM 204 exercised the Watershed Option. Because the alleged Wrongful Acts that would trigger coverage began before January 5, 2016, Scottsdale argued that no coverage was due. *See* First Order, 506 F. Supp. 3d at 223.

The district court rejected this argument. The court concluded that Rocky Aspen became a Subsidiary of Watershed in March 2015, when the Watershed Option was triggered, and that McGrath accordingly became an Insured at that point. *Id.* at 224. The court therefore denied Scottsdale's summary judgment motion and directed the parties to proceed with discovery. *Id.* at 228.

On April 15, 2021, after discovery was complete, Scottsdale moved for partial summary judgment, seeking dismissal of McGrath's (1) counterclaim for bad faith breach of an insurance contract and (2) prayer for consequential and punitive damages above applicable policy limits. This time, the court granted Scottsdale's motion. *See* Second Order, 549 F. Supp. 3d at 338. At the outset of its decision, the court first

clarified that it had not previously decided "whether the underlying claims against McGrath were covered by the Policy, or whether—if they are covered—McGrath could recover amounts exceeding the Policy limit." *Id.* at 341. Thus, after the First Order, McGrath was left "with at least a breach of contract claim with damages within the policy limits." *Id.*

Then, turning to the merits of Scottsdale's partial summary judgment motion, the court found no evidence that Scottsdale had acted in bad faith when it denied McGrath coverage or when it failed to settle the Trustee's claims against McGrath. *See id.* at 343–48. It also found no evidence that the parties contemplated Scottsdale's liability for consequential damages when they entered into the Policy. Accordingly, McGrath had no basis to claim damages above the policy limits. *See id.* at 349–55. The court also held that punitive damages were not available to McGrath because he failed to "identify any tort independent of the contract," *i.e.*, the Policy. *Id.* at 355–56.

Once again, however, the court did not decide whether the Trustee's claims against McGrath were covered by the Policy. And in August, the court scheduled a final pretrial conference for January 19, 2022, and directed the parties to be ready for trial on 48 hours' notice beginning January 24, 2022. *See* Dist. Ct. Dkt. 75 (text order).

In September, the parties filed a joint letter advising the court that they had reached "an agreement subject to final documentation among the parties concerning the issue of damages on McGrath's Counterclaim Count III for breach of the duty to defend. . . ." Dist. Ct. Dkt. 76. The court granted the parties' request for leave to submit "a stipulation and form of judgment" for its approval. Dist. Ct. Dkt. 77. Shortly thereafter, the parties submitted, and the court so-ordered, the document we have mentioned: the "Stipulated Conditional Final Judgment Subject to Reservation of Rights of Appeal." Dist. Ct. Dkts. 79, 80; Special App'x 54.

**IV.    The Stipulated Conditional Final Judgment**

The SCF Judgment is an unusual document. It states that the parties' overarching

goal in having the document entered is to "permit this case to proceed to an appeal of

the Summary Judgment Orders," citing an "interest of efficiency and judicial economy."

Special App'x 56. Then, after summarizing the procedural history, it sets forth an

agreed-to amount of damages on McGrath's counterclaim for breach of the duty to

defend and an agreed-to attorneys' fee award. The document states: "If either the First

Order or the Second Order is reversed, reversed in part, or vacated and remanded, in

whole or in part," then the entire SCF Judgment—including the agreed-to awards—

"shall be void." *Id.*[5]

---

[5] More fully, the SCF Judgment provides in relevant part:

> 2.    In the interest of efficiency and judicial economy, Scottsdale and McGrath
> agree to stipulate to the amount of damages set forth in Paragraph 4 below and
> the award of attorneys' fees set forth in Paragraph 5 below in order to permit this
> case to proceed to an appeal of the Summary Judgment Orders. The relief ordered
> in Paragraphs 4 and 5 below is expressly conditioned on Scottsdale's and
> McGrath's reservation of their respective rights of appeal as set forth in Paragraph
> 3 below.
>
> 3.    The Parties stipulate that Scottsdale and McGrath have expressly reserved
> their rights of appeal to challenge solely: (1) as to Scottsdale and the First Order,
> the Court's judgment that Rocky Aspen was a Subsidiary of Watershed as of May
> 25, 2015 [sic] on occurrence of the "Watershed Option Triggering Events" and the
> Court's finding that McGrath was an Insured as co-manager of Rocky Aspen from
> May 25, 2016 [sic] until his removal as co-manager on January 5, 2016; and, (2) as
> to McGrath and the Second Order, the Court's judgment dismissing McGrath's
> Counterclaim Count II for bad faith breach of contract and prayers for
> consequential and punitive damages. *If either the First Order or the Second Order is
> reversed, reversed in part, or vacated and remanded, in whole or in part, then this
> Stipulated Conditional Final Judgment shall be void.*
>
> 4.    Subject to Paragraphs 2-3 above, the Parties stipulate that the amount of
> damages awarded to McGrath against Scottsdale on his Counterclaim Count III

9

## V. These Appeals

Scottsdale timely filed a notice of appeal from the SCF Judgment, and McGrath timely cross-appealed. Before oral argument, we directed the parties to submit supplemental letter briefs addressing whether we have jurisdiction to hear these appeals under 28 U.S.C. § 1291. On October 21, 2022, the parties submitted their respective letter briefs and jointly moved for removal of AH DB, Castlegrace, and Watershed from this Court's case caption. In their motion, the parties informed us for the first time that (1) "there is no longer any dispute as between Scottsdale and either AH DB . . . or Castlegrace . . . ," and (2) "the third-party claims filed in the action below by Mr. McGrath against . . . Watershed . . . were not served or litigated." No. 21-2641, Dkt. 104, at 3. We heard oral argument soon after.

---

for breach of the duty to defend, together with pre-judgment interest, shall be One Million Dollars ($1,000,000.00).

5.      The Parties agree that McGrath, in addition to the damages and pre-judgment interest set forth in Paragraph 4, shall be awarded attorneys' fees . . . in the amount of Two Hundred Fifteen Thousand Dollars ($215,000.00). Nothing contained herein shall have any effect on the right of McGrath to seek an award of attorneys' fees in connection with Scottsdale's appeal of this Stipulated Conditional Final Judgment or any future proceedings in the District Court that may occur following the entry of this Stipulated Conditional Final Judgment. The Parties agree that costs (other than attorneys' fees) shall not be awarded.

6.      [The district court] shall retain continuing jurisdiction over the Parties to this Stipulated Conditional Final Judgment and over the subject matter of this action for the purposes of interpreting or enforcing the terms of this Stipulated Conditional Final Judgment, subject to the Parties' rights of appeal set forth above.

7.      *Absent a decision on appeal reversing, reversing in part, or vacating and remanding, in whole or in part, either the First Order or the Second Order, the terms of this Stipulated Conditional Final Judgment shall be binding on the Parties.*

Special App'x 56–57 (emphasis added).

## DISCUSSION

Subject to certain exceptions not applicable here, our jurisdiction is limited to appeals from "final decisions" of the district courts. 28 U.S.C. § 1291. As suggested above and as we discuss in detail below, the SCF Judgment has features that distinguish it markedly from an ordinary final judgment. To determine our jurisdiction over these appeals, we must decide whether the SCF Judgment is a "final decision[]" within the meaning of § 1291.

We conclude that, notwithstanding the document's title and its endorsement by the district court, the SCF Judgment is not a "final decision[]" under § 1291 because it does not resolve all claims of all parties to the litigation, it is not an appealable partial judgment under Federal Rule of Civil Procedure 54(b), and it does not resolve with sufficient finality the parties' claims regarding Scottsdale's duties under the Policy. For these reasons and others set forth below, we dismiss the appeals for want of jurisdiction.

## I.      The SCF Judgment does not resolve all claims of all parties.

In general, "[a] 'final' decision embodied in [a] 'final' judgment is one that conclusively determines the pending claims of all the parties to the litigation, leaving nothing for the court to do but execute its decision." *Transp. Workers Union of Am., Loc. 100 v. N.Y.C. Transit Auth.*, 505 F.3d 226, 230 (2d Cir. 2007) (internal quotation marks omitted); *see also Hogan v. Consol. Rail Corp.*, 961 F.2d 1021, 1026 (2d Cir. 1992) (noting the "normal and federally preferred practice of postponing appeal until after a final judgment has been entered, disposing of all the claims of all the parties").

That a final, appealable judgment ordinarily must resolve all claims of all parties is also demonstrated by Federal Rule of Civil Procedure 54(b), which sets out the requirements for entry of a *partial* final judgment as to fewer than all parties or all

11

claims. That rule allows a district court to enter a partial final judgment "only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). "Otherwise," it warns, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time . . . ." *Id.*[6]

The SCF Judgment does not resolve all claims of all parties. It does not mention Scottsdale's claims against Defendants AH DB and Castlegrace, even though Scottsdale seeks declaratory judgments in Counts One and Four of its complaint that refer to "Defendants" collectively. App'x 21–23. The SCF Judgment does not say how these claims have been resolved, and the district court's earlier Summary Judgment Orders do not address whether Scottsdale is entitled to the coverage declarations that it seeks against AH DB or Castlegrace.

In their belated motion to our Court to remove AH DB, Castlegrace, and Watershed from the case caption, Scottsdale and McGrath—presumably recognizing that the outstanding claims against those entities may pose an obstacle to our appellate

---

[6] Rule 54(b) provides in full:

> Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties *only if the court expressly determines that there is no just reason for delay*. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b) (emphasis added).

jurisdiction—represent that "there is no longer any dispute as between Scottsdale and either AH DB [] or Castlegrace." No. 21-2641, Dkt. 104, at 3. So far as the record before us reveals, however, Scottsdale has yet to take the critical step of dismissing its claims against AH DB and Castlegrace.

A declaration by Scottsdale's counsel confirms that there has been no substantive resolution of these claims. Counsel declares in substance that Scottsdale would have no reason to pursue its coverage claims against AH DB and Castlegrace if Scottsdale pays McGrath $1 million in stipulated damages for breach of the duty to defend, because $1 million represents the "remainder of the limits available under the" Policy. *Id.* at 5, ¶ 6. However, as discussed in more detail in Part III, *infra*, under the SCF Judgment the $1 million award becomes "void" if our Court reverses or vacates either of the Summary Judgment Orders in any respect. Special App'x 56, ¶ 3. Scottsdale's declaration that, in that event, it *might* not wish to pursue its claims against AH DB and Castlegrace is not sufficient to resolve those claims under § 1291.[7] Accordingly, Scottsdale's claims against AH DB and Castlegrace are currently pending and, absent the certification discussed below, they preclude our jurisdiction.[8]

---

[7] When a case is pending before the district court, a party may voluntarily dismiss its claims against some defendants by amending its pleading under Federal Rule of Civil Procedure 15, "subject to the same standard of review as a withdrawal under Rule 41(a)." *Wakefield v. N. Telecom, Inc.*, 769 F.2d 109, 114 n.4 (2d Cir. 1985). When an appeal is pending but the presence of unresolved claims has put our jurisdiction into question, we have also accepted jurisdiction when a plaintiff has clarified in a submission to our Court or at oral argument that it is dismissing those unresolved claims *with prejudice* or otherwise has definitively abandoned those claims. *See Alix v. McKinsey & Co.*, 23 F.4th 196, 203 (2d Cir. 2022) (collecting cases), *cert. denied*, 143 S. Ct. 302 (2022). Scottsdale took neither of these steps in this case, and what steps it did take were insufficient.

[8] The joint motion to amend the caption also seeks to remove Watershed from the caption because McGrath did not serve Watershed with process or pursue his claims against Watershed in the district court, other than by pleading them. No. 21-2641, Dkt. 104, at 3. McGrath's claims

## II. The SCF Judgment is not an appealable partial final judgment under Federal Rule of Civil Procedure 54(b).

Absent resolution of all claims, a judgment entered in a case is "final" within the meaning of § 1291 only if it meets the requirements of Rule 54(b). *See Linde v. Arab Bank, PLC*, 882 F.3d 314, 322–23 (2d Cir. 2018) ("Rule 54(b) authorizes entry of judgment in favor of a plaintiff's damages claims only where there has been a finding of liability and the court has 'fixed the damages.'" (internal citation omitted)). The SCF Judgment does not do so.

First, in entering the SCF Judgment, the district court did not "expressly determine[] that there is no just reason for delay" of an immediate appeal or otherwise purport to comply with Rule 54(b). Fed. R. Civ. P. 54(b). We have "repeatedly held that 'in making the "express determination" required under Rule 54(b), district courts should not merely repeat the formulaic language of the rule, but rather should offer a brief, reasoned explanation'" of why a Rule 54(b) certification is appropriate. *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 629 (2d Cir. 1991) (quoting *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 445 (2d Cir. 1985)); *see also Novick v. AXA Network, LLC*, 642 F.3d 304, 310 (2d Cir. 2011) ("To be appropriate, a Rule 54(b) certification must take account of both the policy against piecemeal appeals and the equities between or among the parties."). The SCF Judgment offers no such express determination or

against Watershed, like those against AH DB and Castlegrace, have not been resolved or dismissed. Their pendency, however, does not pose the same obstacle to our jurisdiction as do the claims against AH DB and Castlegrace. *See Leonhard v. United States*, 633 F.2d 599, 608–09 (2d Cir. 1980) (judgment can be final even if claims against unserved defendants remain unresolved). Even putting aside McGrath's claims against Watershed, the SCF Judgment does not resolve all the parties' claims because it does not resolve Scottsdale's claims against AH DB and Castlegrace. Accordingly, we decline to remove AH DB and Castlegrace from the case caption. In any event, removing Watershed from the case caption would not affect our conclusion that we lack jurisdiction over these appeals. For these reasons, we DENY the motion to amend the caption and urge the parties to tie up these loose ends more carefully when this case returns to the district court.

14

reasoned explanation of why entry of a partial judgment under that Rule is appropriate. We therefore do not read the SCF Judgment to be an appealable partial final judgment under Rule 54(b).

McGrath protests that the SCF Judgment satisfies the reasoned explanation requirement because, as noted above, it recites that the parties seek a stipulated judgment "[i]n the interest of efficiency and judicial economy. . . ." No. 21-2641, Dkt. 107, at 8 (quoting Special App'x 56, ¶ 2). This argument does not move the needle, however, because the language used in the SCF Judgment is not the language of Rule 54; by "so-ordering" the parties' offering, the district court did not itself invoke the Rule or determine that "there is no just reason for delay"—a more demanding standard than the parties' own assessment that it would be "efficient" to allow these appeals.

Accordingly, the SCF Judgment is not appealable under Rule 54(b).

### III. The SCF Judgment does not resolve with sufficient finality the claims relating to Scottsdale's duty to defend.

The jurisdictional deficiencies previously discussed might be easily addressed if Scottsdale voluntarily dismissed its claims against AH DB and Castlegrace. We therefore proceed to explain why the claims that the SCF Judgment *does* purport to resolve, albeit on a conditional basis, are not resolved with sufficient finality to support our jurisdiction under § 1291. Our conclusion in this regard means that, even if Scottsdale's claims against AH DB and Castlegrace were dismissed with prejudice, and even if the SCF Judgment did include a Rule 54(b) statement, what is left would still not be an appealable final judgment. *See Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980) ("[I]n making determinations under Rule 54(b)[,] [a] district court must first determine that it is dealing with a 'final judgment.'"); *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435 (1956) ("[Rule 54(b)] does not relax the finality required of each decision, as an individual claim, to render it appealable . . . ."); *Kahn v. Chase Manhattan Bank,*

15

*N.A.*, 91 F.3d 385, 388 (2d Cir. 1996) ("To be certified under Rule 54(b), an order must possess the degree of finality required to meet the appealability requirements of 28 U.S.C. § 1291." (internal quotation marks omitted)); 10 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2656 (4th ed. Apr. 2023 update) [Wright & Miller] ("In general, the standard for determining what constitutes finality under [Rule 54(b)] is the same as that utilized in single claim cases and is found in Section 1291 of Title 28 . . . ."). "[A]ppellate jurisdiction is not enlarged by the operation of Rule 54(b)." Wright & Miller § 2656.

In short, the SCF Judgment is not final because, although it purports to hold Scottsdale liable for breaching its duty to defend McGrath, Scottsdale could continue to dispute its liability on remand even if it loses its appeal. This result is possible because some of Scottsdale's declaratory judgment claims—all of which are logically antecedent to the question whether Scottsdale breached its duty to defend—have been dismissed only conditionally (that is, without prejudice to renewal on remand if we reverse or vacate either Summary Judgment Order in any respect). Our caselaw interpreting § 1291 does not support appellate jurisdiction in these circumstances.

A.  <u>How a plaintiff can secure appellate review when some but not all of its claims have been dismissed</u>

We have held that, when some but not all of a plaintiff's claims have been dismissed, the plaintiff may secure an immediate appeal by consenting to the dismissal of its remaining claims with prejudice. *See Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 425 F.3d 207, 210 (2d Cir. 2005); *Chappelle v. Beacon Commc'ns Corp.*, 84 F.3d 652, 653–54 (2d Cir. 1996). "A party who loses on a dispositive issue that affects only a portion of his claims may elect to abandon the unaffected claims, invite a final judgment, and thereby secure review of the adverse ruling." *Rabbi Jacob Joseph Sch.*, 425 F.3d at 210 (quoting *Atlanta Shipping Corp., Inc. v. Chem. Bank*, 818 F.2d 240, 246 (2d Cir. 1987)). "This rule

'furthers the goal of judicial economy by permitting a plaintiff to forgo litigation on the dismissed claims while accepting the risk that if the appeal is unsuccessful, the litigation will end.'" *Id.* (quoting *Chappelle*, 84 F.3d at 654).

On the other hand, "immediate appeal is unavailable to a plaintiff who seeks review of an adverse decision on some of its claims by voluntarily dismissing the others *without prejudice*." *Id.* (emphasis in original). "Because a dismissal without prejudice does not preclude another action on the same claims, a plaintiff who is permitted to appeal following a voluntary dismissal without prejudice will effectively have secured an otherwise unavailable interlocutory appeal." *Id.* (alterations adopted) (quoting *Chappelle*, 84 F.3d at 654). Such a ploy cannot be tolerated, we have explained, because it would work an "end-run around the final judgment rule," in violation of "the long-recognized federal policy against piecemeal appeals." *Id.* (internal quotation marks omitted); *see also Cunningham v. Hamilton Cnty., Ohio*, 527 U.S. 198, 209 (1999) (recognizing that the final judgment rule "was designed to prevent" piecemeal appeals).

In *Purdy v. Zeldes*, we confronted a situation lying between these two poles. 337 F.3d 253 (2d Cir. 2003). There, the plaintiff, Purdy, asserted three negligence claims against his former attorneys related to their representation of him in a criminal case. *See id.* at 255, 257. Purdy pressed that his counsel were negligent "(1) by failing to discover and disclose [to him] that 29 other persons charged with the same offense as Purdy avoided any prison sentence by pleading guilty; (2) by failing to disclose [to him statements made by a prosecutor during plea discussions]; and (3) by failing to advise Purdy post-sentencing that he could still cooperate and receive a reduction in his sentence." *Id.* at 257.

The defendants moved for summary judgment on all three claims, and the district court granted that motion in part, dismissing Purdy's first two claims on collateral estoppel grounds but denying summary judgment with respect to his post-

sentence claim. *See id.* Purdy then moved to dismiss the remaining claim on the condition that he could reassert it "if, but only if," this Court reversed the dismissal of his first two claims concerning his pre-sentence representation. *Id.* The district court granted Purdy's motion and dismissed the case subject to that condition. *Id.* Purdy then appealed.

We concluded that Purdy's "conditional waiver" of his post-sentence claim did not impair the finality of the judgment because, "[u]nlike the plaintiff in *Chappelle*"—who sought to dismiss her remaining claims *without* prejudice—"Purdy r[an] the risk that if his appeal [was] unsuccessful, his malpractice case [would] come[] to an end." *Id.* at 258.[9] Only if his entire case was revived on appeal could the dismissed claim too spring back to life.

---

[9] We are mindful that our holding in *Purdy* is in tension with a more stringent approach to finality adopted by some of our sister circuits. *See, e.g.*, *West v. Louisville Gas & Elec. Co.*, 920 F.3d 499, 504 (7th Cir. 2019) ("We have . . . repeatedly cited the absence of a final judgment when, after a dispositive ruling as to some but not all claims or parties, the parties have entered [in]to a conditional dismissal of the remaining claims on terms that permit those claims to be revived at a later date."); *Page Plus of Atlanta, Inc. v. Owl Wireless, LLC*, 733 F.3d 658, 659 (6th Cir. 2013) ("Does a party's conditional dismissal of unresolved claims, in which the party reserves the right to reinstate those claims if the case returns to the district court after an appeal of the resolved claims, create a final order under 28 U.S.C. § 1291? No."); *Ruppert v. Principal Life Ins. Co.*, 705 F.3d 839, 842–43 (8th Cir. 2013) (declining to follow *Purdy* and stating that, "unless the appellant's claims are unequivocally dismissed with prejudice, there is no final appealable decision"); *Fed. Home Loan Mortg. Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 438–40 (3d Cir. 2003) (consent judgment not final because it provided that dismissed claims could be reinstated if the court of appeals vacated and remanded); *Dannenberg v. Software Toolworks Inc.*, 16 F.3d 1073, 1075 (9th Cir. 1994) ("An order must conclusively terminate the litigation in order to be considered final; an order that *may* terminate the proceeding is insufficient." (emphasis in original) (citation omitted)).

We also acknowledge some tension between *Purdy* and the Supreme Court's reasoning in *Microsoft Corp. v. Baker*, which held that under § 1291 plaintiffs cannot secure immediate appellate review of an order denying class certification by voluntarily "dismissing their [substantive] claims with prejudice—subject, no less, to the right to revive those claims if the

B. The SCF Judgment is not a final judgment because it allows Scottsdale to reassert the three claims that it has in effect conditionally dismissed, and to continue to dispute its duty to defend McGrath, even if it loses its appeal from the two Summary Judgment Orders.

As we have just observed, our conclusion in *Purdy* that the judgment on appeal was final rested on Purdy's waiver of his right to reassert his conditionally dismissed claim for negligent post-sentence representation if he lost his appeal on the other two negligent representation claims. The SCF Judgment operates differently: it has the effect of conditionally dismissing Counts Two through Four of Scottsdale's complaint, but allows Scottsdale to reassert those claims *even if it loses its appeal*. The SCF Judgment is therefore not final.

As discussed above, the district court here never ruled on the pivotal question whether Scottsdale had a contractual duty, and breached that duty, to defend McGrath. Although in the First Order it ruled that McGrath is an Insured under the Policy (resolving Count One of Scottsdale's Complaint), 506 F. Supp. 3d at 224, that ruling did not end the duty-to-defend inquiry because, in Counts Two through Four of its complaint, Scottsdale advanced several additional arguments disputing its duty to

___

denial of class certification is reversed on appeal." 582 U.S. 23, 41 (2017) (internal quotation marks omitted). Although some aspects of the Court's reasoning in *Microsoft* apply only in the class action context, other aspects could apply more broadly and cast doubt on the practice of conditionally dismissing claims in order to achieve an appealable final judgment. For example, the *Microsoft* Court emphasized that through its amendments to the Rules Enabling Act, 28 U.S.C. § 2071 *et seq.*, Congress has established that rulemaking—"not judicial decisions in particular controversies or inventive litigation ploys"—is the "preferred means for determining whether and when prejudgment orders should be immediately appealable . . . ." *Microsoft*, 582 U.S. at 39–40 (internal quotation marks omitted); *see* 28 U.S.C. §§ 2072(c), 1292(e). In this Circuit, however, *Purdy* remains good law. *See, e.g.*, *S.E.C. v. Gabelli*, 653 F.3d 49, 56–57 (2d Cir. 2011), *rev'd on other grounds*, 568 U.S. 442 (2013); *Whitebox Relative Value Partners, LP v. Transocean Ltd.*, No. 21-84, 2022 WL 288183, at *1 & n.3 (2d Cir. Feb. 1, 2022) (summary order citing *Purdy*). Even were we free as a three-judge panel to do so, we have no occasion to reconsider *Purdy* here, because the circumstances that justified our acceptance of a conditional waiver there are not present here.

defend. In those counts, it seeks a judgment declaring that: the underlying claims against McGrath do not allege a Wrongful Act within the meaning of the Policy (Count Two); the Policy's Subsidiary Exclusion applies (Count Three); and Defendants failed to provide Scottsdale with timely notice of the claim (Count Four). The declarations sought in Counts Two through Four in effect amount to additional defenses to McGrath's counterclaim for breach of the duty to defend: If the district court or a jury were to conclude that Scottsdale is entitled to any of these declarations, then Scottsdale would not have breached its duty, *even though McGrath is an Insured under the Policy*.[10]

Counts Two through Four have not been finally resolved either by the district court or in the SCF Judgment. The district court never decided whether Scottsdale is entitled to these declarations. And the SCF Judgment only *conditionally* establishes that Scottsdale breached its duty to defend and thus only *conditionally* resolves Counts Two through Four. In other words, instead of dismissing Counts Two through Four with prejudice, the SCF Judgment dismisses those counts conditionally such that Scottsdale could reassert them on remand if the SCF Judgment becomes void under its terms: if we reverse or vacate either Summary Judgment Order in any respect. *See* Special App'x 56, ¶ 3. Because the Summary Judgment Orders contain several rulings, some of which are challenged by McGrath, the SCF Judgment could become void even if Scottsdale were to lose its appeal regarding whether McGrath is an Insured under the Policy. If this result came to pass, then, on remand, Scottsdale could continue to pursue Counts Two through Four and dispute its duty to defend McGrath. Accordingly, and in plain

---

[10] In its supplemental letter brief concerning jurisdiction, Scottsdale states that it "[a]ppl[ied]" the district court's holding in the First Order that McGrath is an Insured and "concluded" that the underlying claims against McGrath were covered by the Policy. No. 21-2641, Dkt. 108, at 5. But the district court never *ruled* that the underlying claims were covered, and Scottsdale never dismissed Counts Two through Four of its complaint.

contrast to *Purdy*, Scottsdale could lose its appeal and yet continue to litigate the claims that were conditionally dismissed by the SCF Judgment.[11]

More concretely: This possibility would come to pass if, for example, we (1) reached the merits of these appeals; (2) affirmed the First Order (which found that McGrath was an Insured); and (3) vacated the Second Order (which found no basis for a bad faith ruling against Scottsdale or for allowing McGrath to recover damages above policy limits)[12] and therefore remanded the case, reinstating McGrath's counterclaim for bad faith breach of an insurance contract and permitting him to seek damages in excess of the policy limits.

Critically, however, vacating the Second Order would also mean that, by its terms, the entire SCF Judgment would become "void." *Id*. In that situation, the putative resolution of the damages amount associated with McGrath's counterclaim for breach of the duty to defend would come undone: Scottsdale's agreement to the stipulated

---

[11] Scottsdale argues that the First Order resolved Counts Two and Three of Scottsdale's complaint because (1) Scottsdale sought both those declarations on the theory that any alleged wrongdoing by McGrath commenced prior to January 2016—when, in Scottsdale's view, McGrath became an Insured, and (2) the district court, in resolving Count One, rejected that theory by holding that McGrath became an Insured in March 2015, when the Watershed Option was triggered. *See* No. 21-2641, Dkt. 108, at 4. Scottsdale is correct that the district court rejected its theory about when McGrath became an Insured. *See* First Order, 506 F. Supp. 3d at 224. If the SCF Judgment were to become void, however, it is not clear to us that Scottsdale would be precluded from pursuing Counts Two and Three on remand based on alternative theories that have not been rejected by the district court. In any event, whether the district court resolved Counts Two and Three does not affect our decision because it is clear that the district court did not resolve Count Four: The court never addressed whether Defendants provided Scottsdale with timely notice of the claim. Because the district court did not resolve Count Four, the SCF Judgment has the effect of conditionally dismissing it. And the fact that there is at least one conditionally dismissed claim that Scottsdale could reassert on remand, even if it loses its appeal, is sufficient to render the SCF Judgment nonfinal.

[12] We express no views here, of course, about the substantive merits of the Summary Judgment Orders.

21

damages award would be void, and there would be no intact order of the district court holding that Scottsdale breached its duty to defend.[13] Therefore, although Scottsdale would have lost its appeal from the First Order, Counts Two through Four of Scottsdale's complaint—the claims that Scottsdale conditionally dismissed in an effort to create a final judgment—would be reinstated.[14]

Unlike the judgment in *Purdy*, then, the SCF Judgment does not ensure that the party trying to conditionally waive a claim "runs the risk that if [its] appeal is unsuccessful," its "case comes to an end." *Purdy*, 337 F.3d at 258. The SCF Judgment does not force Scottsdale to "stand or fall" on its challenge to the adverse ruling it appeals, *Atlanta Shipping Corp.*, 818 F.2d at 246–47; Scottsdale could lose its appeal (fall) *and* continue to dispute its liability on remand (stand). To accept this sort of conditional waiver would be to afford Scottsdale an appeal that is inherently interlocutory: Scottsdale would have an opportunity to learn our views on one disputed issue that is subsidiary to the duty to defend (whether McGrath is an Insured) before the district court resolves the other disputed issues that are subsidiary to the duty to defend. Even our precedent, which is relatively forgiving compared to the law of many other circuits,

---

[13] For this reason, this case is readily distinguishable from *Linde*, where Rule 54(b) was properly used to establish the amount of damages and secure appellate review of a final liability determination in the form of a jury verdict. *See* 882 F.3d at 323. Here, by contrast, there is no final liability determination with respect to McGrath's counterclaim for breach of the duty to defend—the foundational claim for the stipulated damages award in the SCF Judgment.

[14] At oral argument, Scottsdale's counsel stated that the parties' "intent" was that, if we affirmed the First Order but vacated the Second Order, then the "coverage issue" would nonetheless be "resolved." Oral Argument, at 6:10–6:23. When reminded of the text of the SCF Judgment, which states that the entire Judgment "shall be void" if we reverse or vacate either Summary Judgment Order in any respect, Special App'x 56, ¶ 3, Scottsdale's counsel reiterated that the SCF Judgment does not reflect the parties' intent. *See* Oral Argument, at 6:38–7:10. We decline Scottsdale's apparent invitation to rewrite the SCF Judgment or to interpret it contrary to the plain meaning of its text.

*see supra* n.9, does not recognize appellate jurisdiction in these circumstances. A party may not end-run the final judgment rule and "secure[] an otherwise unavailable interlocutory appeal." *Rabbi Jacob Joseph Sch.*, 425 F.3d at 210 (quoting *Chappelle*, 84 F.3d at 654).

## IV.    Our jurisdiction is limited by statute.

Finally, we briefly address McGrath's suggestion, made at oral argument in this Court, that we simply treat the SCF Judgment as final because it would be the most "efficient" way forward. Oral Argument, at 28:05–28:12. Whether it would be efficient for us to resolve the merits of these appeals now depends in part, of course, on how we would resolve them. In any event, McGrath's suggestion is beside the point because the final judgment rule is statutory, not prudential. *See Microsoft*, 582 U.S. at 36–37; *Rabbi Jacob Joseph Sch.*, 425 F.3d at 211. Our authority to hear appeals is constrained by statute and by precedent, all of which are designed to work in service of the rule's core goals: "preserv[ing] the proper balance between trial and appellate courts, minimiz[ing] the harassment and delay that would result from repeated interlocutory appeals, and promot[ing] the efficient administration of justice." *Microsoft*, 582 U.S. at 36–37 (citation omitted).

## CONCLUSION

The SCF Judgment is not a "final decision[]" of the district court within the meaning of 28 U.S.C. § 1291. Accordingly, we **DISMISS** these appeals for want of jurisdiction, and we **DENY** the motion to amend the caption. For reasons of judicial economy, the Clerk of Court is directed to refer any further proceedings and subsequent appeals in this case to this panel.